

John Bell Edwards
Governor

### State of Louisiana
LOUISIANA MOTOR VEHICLE COMMISSION

Lessie A. House
Executive Director

July 30, 2020

***VIA EMAIL & U.S. MAIL***

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Post Office Box 94005
Baton Rouge, Louisiana 70804

**RE:** Louisiana Motor Vehicle Commission information regarding an opinion requested by Representative Phillip Devillier regarding La. R.S. 32:1252(50); La. R.S. 32:1261(A)(1)(s) & (t); La. R.S. 32:1261(A)(1)(k) and related statutes in the Motor Vehicle Franchise Act

Dear Attorney General Landry:

This letter is respectfully furnished in response to a request from your office for information or legal memorandum regarding an opinion your office is preparing at the request of State Representative Phillip Devillier regarding portions of La. R.S. 32 (Title 32) which are administered by this agency, the Louisiana Motor Vehicle Commission (LMVC). Specifically, your office was asked to answer Questions A and B, below:

A. "*Is it a violation of La. R.S. 32:1261(A)(1)(k)(i) and (ii) for a manufacturer or distributor to lease new vehicles directly to consumers?*"

B. "*May a manufacturer or distributor (or any subsidiary thereof) perform warranty services directly without using a dealer? La. R.S. 32:1261(A)(1)(s) and (t)*

We address these two questions in order, below.

### QUESTION A

**Question:** "*Is it a violation of La. R.S. 32:1261(A)(1)(k)(i) and (ii) for a manufacturer or distributor to lease new vehicles directly to consumers?*"

**Answer:** It is **not** a violation of law for a manufacturer or distributor to ***lease*** new vehicles directly to consumers.

3017 KINGMAN STREET, METAIRIE, LA 70006 | PHONE: (504) 838-5207 | FAX: (504) 838-5416

EXHIBIT 1

LMVC000046

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 2

### Law and Argument Regarding Question A

Despite arguments seeking to bootstrap the statute which clearly prohibits direct *sales* by manufacturers/distributors to consumers into also prohibiting direct *leasing* to consumers by analogy, no such prohibition against direct *leasing* exists. Using mere analogy instead of a statute to answer the question would result in an improper, activist expansion of the law beyond the language passed by the legislature. The LMVC's refusal to unilaterally "legislate" that expansion in applying the law is what has given rise to this Opinion Request.

If the legislature wants to prohibit direct *leasing* it can easily pass a law to accomplish that, but thus far it has not. Absent such action by the legislature, the LMVC must issue a license to any qualified *motor vehicle lessor* applicant defined in La. R.S. 32:1252(36)(a) and allow such licensee to conduct its business according to law, including direct *leasing* by manufacturers/distributors to consumers.

The legislature is not opposed to amending the law to address changes in the automotive industry, including this law specifically. In 2017 the legislature amended this law to provide that not only manufacturers/distributors who have a dealer network are prohibited from selling directly to consumers, but also now even manufacturers/distributors who have no dealer network (Tesla?) are prohibited from selling directly to consumers in Louisiana. Without expressing an opinion here on the constitutionality of that change, one can only surmise the likelihood, expense and outcome of a legal challenge if that prohibition is extended to direct *leasing* (by Tesla?) as well, when no mention of prohibiting direct *leasing* is contained in the statute. Importantly, the legislature chose not to address direct *leasing* when it modified the law on direct selling in that 2017 amendment.

For many years the LMVC has regularly issued Lessor licenses to entities that are not franchised motor vehicle dealers who lease new and unused motor vehicles directly to consumers. It has also issued Lessor licenses to motor vehicle manufacturers or distributors or their subsidiaries who sell directly to consumers. In addition to Tesla Lease Trust who is licensed as a Lessor, Ferrari is a manufacturer who has held a Lessor license from the LMVC since 2015 and is authorized to lease directly to consumers.

Respectfully, Representative Devillier's Opinion Request (on behalf of others) represents the attempt of others to inject a desired legal interpretation into the space left by a non-existing law, through mere analogy to an actually existing law, using unsupported speculation, and unsubstantiated and often inaccurate statements of how the industry has operated in the past. See examples from Representative Devillier's letter below.

EXAMPLE 1

> "Although it is hard to theorize a negative, it is safely assumed that the reason "lease" is not contained is that, when most definitions were drafted, leasing of vehicles was not a prevalent practice as it is today."

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 3

**Our Response:** Leasing of motor vehicles has widely occurred in Louisiana for many decades. Surely, if the legislature wished to amend the law regarding any prohibition in relation to direct leasing it has had adequate time to do so, and could have easily done so when it amended provisions of the prohibition against direct *sales* in 2017, but it did not. Therefore, the reasons hypothesized for the legislature's inaction regarding direct *leases* cannot be "safely assumed."

EXAMPLE 2

> "Historically, the prohibitions against manufacturers and distributors contained in La. R.S. 32:1261, and its many subparts, apply to both sale and lease transactions, without them necessarily saying so."

**Our Response:** To the extent that "*prohibitions against manufacturers and distributors contained in La. R.S. 32:1261, and its many subparts, apply to both sale and lease transactions,*" it is true only when such prohibitions are explicitly provided in law, and never "*without them necessarily saying so.*" It should be noted that no examples of such alleged unenumerated prohibitions are provided.

Further, jurisprudence does not support an assertion that a statute may prohibit a regulated activity without identifying that activity. In Ellis v. Louisiana Bd. Of Ethics, 2014-0112 (La. App. 1 Cir. 12/30/14), 168 so.3d 714, 724, writ denied, 2015-0208 (La. 4/17/15), 168 So. 3d 400, the court stated:

> "The rule of lenity posits that the courts should not construe penal statutes as extending powers not authorized by the letter of the law even if such powers are arguably within its spirit. The rule of lenity, moreover, applies not only to the substantive ambit of criminal laws and civil penal statutes, but also to the penalties imposed by those laws. Additionally, the rule of lenity requires that where there is any doubt as to the interpretation of a statute upon which a prosecution is based, doubt must be resolved in favor of the accused. This principle applies to both criminal laws and civil statutes of a penal nature. And the rule of lenity has been applied in the area of administrative law." (Emphasis added)

EXAMPLE 3

> "Indeed, under Louisiana's version of the Uniform Commercial Code (UCC), if a lease contains an option on the part of the lessee of the vehicle to purchase at the end of the lease, it is considered a disguised sale, meaning that the lease payments are simply another equivalent of note payments secured by a lien in a purchase transaction. La. R.S. 10:1-203. Delivery to a Louisiana consumer of a leased vehicle is also a taxable event subject to La. R.S. 47:302, if there is a 'sale, use, lease, or rental of tangible personal property' in the State. A tax is added to the monthly payment of every leased vehicle."

**Our Response:** While these statements may apply to certain provisions of some leases and for some tax treatments, there are many types of leases of motor vehicles. And options to purchase motor vehicles are only *options* to purchase, not actual purchases. Also, this argument does not have direct bearing on the issue

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 4

at hand except as an argument to conflate the definitions of *sale* and *lease*, which will be dealt with later in this document. Nonetheless, please note that many leases contain *no* option to purchase and the lessee must return the motor vehicle to the lessor at the end of the lease. The Tesla Lease Trust lease which is presumably the basis of this Opinion Request is a lease that does *not* contain an option to purchase.

Also, this example does not describe the difference regarding the tax treatment of a motor vehicle that is sold versus a motor vehicle that is leased. The tax on the *sale* of an automobile is due in its entirety at the time of the sale on the entire sales price (less trade-in). The tax due on the *lease* of a motor vehicle is calculated only upon the amount of the monthly lease payment, and the tax is paid monthly, and not paid on the entire value of the leased automobile. Sales and leases are treated differently for tax purposes because they are different under law.

EXAMPLE 4

Another proffered argument to support the erroneous proposition that the prohibition against direct *sales* from manufacturers and distributors to consumers should also include a prohibition against direct *leases*, is that La. R.S. 32:1252(50) defines a "*retail sale*" as any "*...act of selling, bartering, exchanging, or otherwise disposing of a motor vehicle...*" This argument incorrectly claims that the language "*disposing*" includes *leasing*, thereby making the prohibition extend to the direct *lease* of a motor vehicle.

It is also further argued without legal basis or factual accuracy that, "*For decades, it was considered by the industry and the Commission that "otherwise disposing of" would apply to leases.*"

**Our Response:** The LMVC categorically states that it has not and does not subscribe to that view and has never enforced the law in that way. Indeed, that interpretation would be contrary to long-settled, still applicable case law. The Louisiana Supreme Court long ago clearly set out the difference in a "sale" and a "lease" and described why a "lease" is not a means by which one may "dispose" of a motor vehicle. In Logan v. State Gravel Co., 158 La. 105 (1926); 103 So. 526, the Louisiana Supreme Court provides:

> "The essential difference between *a sale* and *a lease* is this: That in a sale the property, or ownership, of the thing sold passes at once out of the vendor and to the purchaser, his heirs and assigns, *forever*, whilst in a lease the property, or ownership, of the thing leased remains in the lessor (landlord) and the lessee (tenant) acquires *only the use or enjoyment* of the thing leased, and must restore it at the end of the term." (Emphasis in text)

Given this controlling jurisprudence, the phrase "*otherwise disposing of a motor vehicle*" does not include the *lease* of a motor vehicle. Therefore, to lease a motor vehicle is *not* to "*dispose*" of that motor vehicle, and the prohibition against direct *sale* does not extend to direct *lease*.

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 5

Further, the chronology of legislative history establishes that the legislature did not consider "lease" as a means of "otherwise disposing of a motor vehicle." Between 1961 and 1966, the Louisiana legislature enacted the definition of "retail sale" to include "otherwise disposing of a motor vehicle."[1] Yet, the LMVC did not begin regulating motor vehicle lessors and the motor vehicle leasing business until 1984 with the passage of Acts 1983, No. 539. As the legislature did not delegate the task of administration and regulation of the motor vehicle leasing business to the LMVC until 1984, logic would have it that the legislature did not contemplate in 1966 that the "otherwise disposing of a motor vehicle" was a reference to the activity of leasing motor vehicles. Legislative history evidences that the "otherwise disposing" of a motor vehicle in the La. R.S. 32:1252(50) definition of "retail sale" did not, and does not, contemplate a "lease."

EXAMPLE 5

In yet another unpersuasive argument that claims a "sale" and a "lease" should be viewed the same under law, the definition of "ultimate purchaser" provided in La. R.S.32:1252(57) is cited. This argument theorizes that since the law contains no definition of an "ultimate lessor" this must somehow mean that the definition of "ultimate purchaser" includes *lessors*, and therefore presumably, that the prohibition of direct "*sales*" to consumers also somehow prohibits direct "*leases*" to consumers.

**Our Response:** This tortured explanation to compensate for the absence of actual statutory language—an absence presumably intentional by the legislature—is unpersuasive and incorrect. It is fundamental Louisiana law that a sale and a lease are separate and distinct acts, defined by law and caselaw. Civil Code article 2439 (Code Title 7. Sale) and Civil Code article 2668 (Code Title 9. Lease) clearly set out the distinction. Years of Louisiana caselaw, transactions, tax planning and regulatory enforcement have acknowledged and relied upon that distinction. To opine otherwise would be contrary to well-settled law and practice and would open all Louisiana businesses and transactions to untold legal, commercial and regulatory tumult, confusion and complication.

The Louisiana legislature delegated La. R.S. 32:1261 to the Louisiana Motor Vehicle Commission ("LMVC") for its administration and enforcement. The statutory law is clear that the legislature prohibited a manufacturer/distributor from selling or offering to sell new motor vehicles directly to a consumer. Likewise, it is equally clear that the words "lease," "leasing," and "offer to lease," were not included by the legislature in La. R.S. 32:1261(A)(1)(k)(i).

In Mallard Bay Drilling, Inc. v. Kennedy, 2004-1089 (La. 6/29/05), 914 So. 2d 533, 546, the Louisiana Supreme Court stated: "*It is presumed that every word and provision in a statute was intended to serve some useful purpose, that some effect is to be given to each provision, and that no words or provisions were used unnecessarily.*" (Emphasis added)

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 6

As such it is clear that when the legislature prohibited manufacturers/distributors from "selling" or "offering to sell" new automobiles directly to the public, the legislature's intent was to prohibit the act of "selling" or "offering to sell." The legislature did not express an intent to prohibit the "lease" or "offering to lease" new vehicles directly to the public by manufacturers/distributors. If the legislature wanted to prohibit the "lease" or "offer to lease" new vehicles directly to the public by manufacturers/distributors, it would have included the words "lease" or "offering to lease" in La. R.S. 32:1261(A)(1)(k).

**Conclusion:** It is **not** a violation of law for a manufacturer or distributor to lease new vehicles directly to consumers.

### QUESTION B

**Question**: "*May a manufacturer or distributor (or any subsidiary thereof) perform warranty services directly without using a dealer? La. R.S. 32:1261(A)(1)(s) and (t)*

**Answer**: <u>Yes, a manufacturer or distributor (or any subsidiary thereof) may perform warranty services directly without using a dealer, as specifically provided in La. R.S. 32:1261(t)(i), (ii), (iii) and (iv), when the manufacturer or distributor or subsidiary is a fleet owner and performs warranty work on its own fleet.</u>

**Law and Argument Regarding Question B**

La. R.S.32:1261(s), which prohibits a manufacturer or distributor from "use[ing] any subsidiary...to accomplish what would *otherwise be illegal conduct under this Chapter*" does not apply because performing such warranty work on such entities' own fleets is specifically *authorized* in "this Chapter" by La. R.S. 32:1261(t)(i), (ii), (iii) and (iv).

Any prohibition contained in La. R.S. 32:1261(A)(1)(s) by its own language has no applicability to conduct that is specifically authorized in "this Chapter," i.e. La. R.S. 32:1251, et seq. In La. R.S. 32:1261A(1)(t)(i), the legislature specifically allows a "fleet owner" to operate a warranty and repair center for work on its own fleet. The legislature defined a "fleet owner" to include a person who is, "...approved and authorized by a manufacturer to perform warranty repairs and owns or leases vehicles for its own use or a renting or leasing company that rents, maintains, or leases vehicle to a third party." This definition applies to Tesla Lease Trust.

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 7

In La. R.S. 32:1261A(1)(t)(v), the legislature withheld from the Louisiana Motor Vehicle Commission all authority over warranty repairs by such fleet owners. In La. R.S. 32:1261A(1)(t)(vi) the legislature further made clear that a repair facility of a fleet owner is not a satellite warranty and repair center, and that the LMVC has no licensing authority over fleet owner repair facilities. Therefore, the LMVC has no authority to prohibit a manufacturer or distributor or subsidiary (Tesla Lease Trust) from performing warranty repairs on its own fleet, and has no authority to license that operation. Tesla Lease Trust's repair facility as a fleet owner is limited to performing warranty work on its own fleet. It cannot legally perform warranty work on vehicles not owned by Tesla Lease Trust. If Tesla Lease Trust were to perform warranty repairs on vehicles it did not own, that would subject Tesla Lease Trust to LMVC regulation and enforcement actions. As can any repair shop, Tesla Lease Trust can perform non-warranty repair work on vehicles of any make or model of its choosing without subjecting itself to LMVC regulation and enforcement actions.

The LMVC's regulatory actions are consistent with Benson & Gold Chevrolet, supra, in applying La. R.S. 32:1261(A)(1)(s), La. R.S. 32:1261A(1)(t)(i), La. R.S. 32:1261A(1)(t)(v), and La. R.S. 32:1261A(1)(t)(vi) in determining that: 1) the legislature defines the LMVC's administrative overview of the operation of satellite warranty and repair centers, 2) the legislature allows an owner of lease fleet vehicles to perform warranty repairs; 3) the legislature defines "fleet owner," 4) the legislature removes "fleet owners" from the LMVC's administrative authority, and 5) the legislature declares that a repair facility of a fleet owner is not a satellite warranty and repair center and is not subject to licensing or regulation by the LMVC.

**Conclusion**: A manufacturer or distributor (or any subsidiary thereof) may perform warranty services directly without using a dealer, as specifically provided in La. R.S. 32:1261(t)(i), (ii), (iii) and (iv), when the manufacturer or distributor or subsidiary is a fleet owner and performs warranty work on its own fleet.

### AN OVER-ARCHING ADDITIONAL CONSIDERATION

**The Danger of Legal Liability for LMVC and Its Commissioners**

Both questions asked in Representative Devillier's Opinion Request involve a longtime issue existing among Tesla and franchised dealers. The letter directly references the LADA and Tesla Lease Trust. The LMVC board is made up of many motor dealers who compete with Tesla. The motor vehicle dealers on the LMVC commission are all franchised dealers. Tesla is not represented on the LMVC board and does not have franchised dealers.

The questions (or variations thereof) contained in the Opinion Request letter have been discussed at length between the LMVC and LADA for well over five years, the parties having met numerous times in attempts for LADA to convince LMVC to revise its interpretations. The LMVC has always openly held (and directly stated to LADA) that it would issue a license to Tesla if Tesla met the statutory guidelines. The LMVC has no authority to act outside the statutes and has always advised the LADA that the way to have the LMVC change its regulatory actions is to have the law changed. Year after year LADA took no action on these issues in the legislature until 2017.

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 8

In 2017 LADA successfully worked to have the statute amended to provide that a manufacturer or distributor or subsidiary, *even one without a dealer network,* is prohibited from <u>selling</u> new and unused motor vehicles directly to consumers. La. R.S.32:1261A(1)(k)(i). This amendment would seem to require the LMVC to deny a manufacturer or distributor license to Tesla or a subsidiary if it intends to use its non-franchise dealer business model to sell new and unused motor vehicles directly to consumers.

The 2017 amendment did <u>not</u> address direct *leasing* by a manufacturer or distributor or subsidiary. In 2019, the LMVC approved the motor vehicle lessor license application of Tesla Lease Trust and issued the license. In 2019 Tesla Lease Trust also opened a fleet owner repair facility in New Orleans to provide warranty repairs for the motor vehicles Tesla Lease Trust leased, which did not require approval by the commission. These 2019 events seem to have given rise to the current Opinion Request.

Tesla's non-franchise business model has been a contentious issue with franchise dealers around the country and has resulted in much litigation. The Opinion Request in this case requests that your office issue an opinion that supports the contentions of the LADA, a trade association comprised of franchise dealers.

As a commission including many franchised dealers, any actions by the LMVC which are determined to be anti-competitive or a restraint on trade designed to protect the franchised dealers serving on the LMVC board, could subject the commission and its commissioners to civil and even criminal liability. Reading or analogizing additional language that the legislature clearly did not pass into statutes that it did pass, which results in competitive advantages for LMVC commission members, represents a clear risk of this liability.

Should the LMVC act outside of the clearly articulated directives of the legislature expressed in La. R.S. 32:1261(A)(1)(s), La. R.S. 32:1261A(1)(t)(i), La. R.S. 32:1261A(1)(t)(v), and La. R.S. 32:1261A(1)(t)(vi), the LMVC (*i.e.*, the state of Louisiana) places at risk its immunity from liability imposed by the federal anti-trust law. This immunity was limited in 2015 by the United States Supreme Court decision in <u>N. Carolina State Bd. of Dental Examiners v. F.T.C.</u>, 574 U.S. 494, 494, 135 S. Ct. 1101, 1104, 191 L. Ed. 2d 35 (2015). As a result of this decision, a state agency is not automatically entitled to this immunity, but the action must be taken pursuant to a <u>clearly stated state policy.</u> That is, for the LMVC to be immune from federal anti-trust law: 1) the restraint on trade imposed by the board by means of its regulation/rule must be one clearly articulated and affirmatively expressed in state policy, and 2) there must be active supervision of the promulgation of the regulation/rule by the state agency.

Certainly, La.R.S.32:1261A(k)(i) does not provide for any prohibition for a manufacturer or distributor or subsidiary to *lease* directly to a consumer. And La. R.S. 32:1261(A)(1)(s), La. R.S. 32:1261A(1)(t)(i), La. R.S. 32:1261A(1)(t)(v), and La. R.S. 32:1261A(1)(t)(vi) do not clearly prohibit owners of fleets from performing warranty repairs. Those statutes explicitly provide for it. To "interpret" otherwise is to place the LMVC and its commissioners at risk of the loss of immunity, and therefore, at risk of personal liability.

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
Attention: Civil Division (opinionrequest@ag.louisiana.gov)
Baton Rouge, Louisiana 70804
July 30, 2020
Page 9

## IN CONCLUSION

The LMVC and LADA have a longstanding, very good working relationship. While the entities are completely independent of each other and have different missions, communication and mutual respect for the role of each other has resulted in both succeeding in their respective missions. It would be surprising if LADA were involved in seeking an attorney general opinion to oppose the LMVC's implementation of its duties under the law, which has required the LMVC to write this letter to respond to the Opinion Request under consideration. We appreciate the opportunity to furnish this information and analysis.

The LMVC respectfully requests that your office issue its opinion consistent with the following:

A. It is **not** a violation of law for a manufacturer or distributor to *lease* new vehicles directly to consumers; and

B. A manufacturer or distributor (or any subsidiary thereof) may perform warranty services directly without using a dealer as specifically provided in La. R.S. 32:1261(t)(i), (ii), (iii) and (iv) if the manufacturer or distributor or subsidiary is a fleet owner and performs warranty work on its own fleet.

Sincerely,

Allen Krake
Chairman of the Louisiana Motor Vehicle Commission