

**BREAZEALE, SACHSE & WILSON, L.L.P.** | ATTORNEYS AT LAW

CLAUDE F. REYNAUD, JR.
*Partner*
cfr@bswllp.com

DIRECT DIAL: 225-381-8012
CORPORATE PHONE: 225-387-4000
FAX: 225-381-8029
One American Place, 23rd Floor
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197

www.bswllp.com

March 2, 2020

*VIA E-MAIL ONLY:*

Allen O. Krake, Chairman
LOUISIANA MOTOR VEHICLE COMMISSION
400 East Howze Beach Rd.
Slidell, Louisiana, Louisiana 70461

LMVC
MAR 09 2020

RE: *Distribution Channels*
BS&W File: 6456-50948

Dear Allen:

You have asked for a letter requesting information and suggestions related to what LADA believes are important regulations we would like the Commission to enact, of course, with the appropriate legislative oversight, pursuant to La. R.S. 32:1253E. Here are our suggestions:

**I.   Modifications to the rules that require licensing of salesmen.**

La. R.S. 32:1254A(16) and C(4) and (6) require that salesmen must be licensed at the geographic location (rooftop) where he or she works. So, for example, if a salesman is licensed in one of your stores, in order to actually work at another store also owned by your group legally, he or she would need another license and pay another fee. We believe, when these rules were enacted, there were no All Stars or Ray Brandt mega groups with 10 or more rooftops with common ownership.

As an efficient alternative, we recommend that there be but one license for commonly owned stores with a designation in the license which the commonly owned rooftops the salesman is authorized to work. This will eliminate inefficiency and delay in transferring salesmen within the same commonly owned group and avoid unnecessary fines when the inevitable mistakes are made. It is perfectly acceptable that the multi-rooftop license fee should be increased by a reasonable amount if there is any concern there may be a reduction in revenue to the Commission by the proposed amendment.

**II.   Clarifications of legislation and rules related to distribution channels.**

La. R.S. 32:1251 says, in part, that the purpose of the Commission is to "prevent disruption of the system of distribution of motor vehicles and recreational products to the public..." To that end, we believe a clarification as to prohibitions against manufacturers selling directly to the public should also include directly leasing to the public, meaning the ultimate consumer. This clarification does not change the intent of the law or the aforementioned purpose

BATON ROUGE  •  NEW ORLEANS  •  MONROE

1843932.v1



LMVC000030

of the public policy that is the core of what the Commission does. As you know, there is no definition of "lessee," "lessor," or "lease" in our law.[1] The law was written at a time when leases were not as prevalent as they are now. The absence of any language addressing "lease" creates the context for our argument that the phrase "otherwise disposed of" must include "lease" or any other means of barter, exchange, etc. Thus, we would propose that a regulation explain that, under La. R.S. 32:1261A(1)(k), manufacturers may not lease a new or unused motor vehicle directly to a consumer, except upon the conditions delineated therein. Moreover, La. R.S. 32:1252(50) wherein it defines, fairly broadly, "retail sale," a regulation should be enacted including within the phrase "otherwise disposing the motor vehicle" "leases," and explaining that the phrase "ultimate purchaser" is actually meaning the ultimate "consumer" for use as a consumer. Lastly, La. R.S. 32:1252(57), wherein the phrase "ultimate purchaser" is defined, should be clarified, as is clearly the intent of the language, to include "ultimate lessees," because they, like a purchaser, is someone who is leasing, in good faith, for purposes other than re-sale or re-lease.

## II. Regulations clarifying the intent of a fleet exemption.

The beginning of La. R.S. 32:1261A(1)(t)(i) says that a manufacturer or distributor is prohibited "to operate a satellite warranty and repair center." There is an exception for "fleet" owners, which was clearly intended to be Entergy, ExxonMobil, etc. La. R.S. 32:1261A(1)(s) makes it clear, however, that a manufacturer cannot do, through a subsidiary, what it cannot do directly. Accordingly, the prohibition follows through to the subsidiary in any fashion or form. Although we sincerely believe that no clarification regulation is necessary, if it is the Commission's position that there is some ambiguity, then we believe a clarifying regulation simply stating that a manufacturer who is prohibited from operating a satellite warranty center (fleet or not) cannot use a subsidiary to circumvent that prohibition is appropriate. This, indeed, is the simplest of all the regulations we propose.

## III. Current licensing requirements.

At a minimum, any manufacturer that authorizes a satellite repair center in Louisiana must have a manufacturer's license. Also, the offer of contractual warranty rights to a lessee, which is a contract between the manufacturer and the purchaser/lessee, should be regulated by the LMVC. If you believe this to be the correct position, then there is no reason for the LMVC to delay demanding that any manufacturer authorizing others to do warranty work apply for a manufacturer's license.

Any manufacturer should also have a motor vehicle lessor/franchisor license. The licensing requirements for a motor vehicle lessor include the filing of a franchise or contract in effect between a motor vehicle lessor and a motor vehicle lessor/franchisor, such as Honda and Honda Trust. Clearly, our statutory scheme presumes that a motor vehicle lessor operating in Louisiana would be in contractual privity with a franchisor, and that franchise or contract would be on file at the LMVC.

---

[1] The only definition is "lease facilitator."

Allen O. Krake
March 3, 2020
Page 3

These two licensing steps may be undertaken now without any regulatory amendment.

## CONCLUSION

Dealer protection laws have been widely upheld as being necessary to protect dealers from the abuses of manufacturers, and the implementation of them has been seen as being in furtherance of the stated public policy to preserve the integrity of the distribution of motor vehicles and the protection of the public welfare. Again, La. R.S. 32:1251 expresses Louisiana's declaration of public policy to prevent the disruption of the system of the distribution of motor vehicles to the public. Displacement of competition is clearly a logical result of the regulatory directive and authority given the LMVC by the legislature. The LMVC may rely on this authority to promulgate whatever rules it deems necessary to make it clear that manufacturers cannot sell or lease directly to the public.

LADA welcomes continued communications with the Commission to ensure that the rights of Louisiana's dealers and the clearly articulated public policy of the State regarding the orderly distribution of motor vehicles are not threatened or harmed by the actions of manufacturers that seek to circumvent our laws with contorted interpretations and manufactured loopholes.

With best personal regards, I am

Very truly yours,

BREAZEALE, SACHSE & WILSON, L.L.P.

Claude F. Reynaud, Jr.

CFRjr:sec

cc:  Will H. Green
     Jeanne C. Comeaux

1843932.v1

LMVC000032