## LOUISIANA HOUSE OF REPRESENTATIVES



P.O. Box 986
Eunice, LA 70535
Email: devillierp@legis.la.gov
Office: 337.457.0194
Fax: 337.457.5649

COMMITTEES:

Civil Law and Procedure
Natural Resources and Environment

### PHILLIP DEVILLIER
State Representative ~ District 41

**#OR 20-0059
ALDERMAN
6/29/20**

June 4, 2020

<u>VIA E-MAIL: (OpinionRequest@ag.louisiana.gov)</u>

Honorable Jeff Landry, Attorney General
Louisiana Department of Justice
**Attn: Civil Division**
Post Office Box 94005
Baton Rouge, Louisiana 70804

RE: **REQUEST FOR OPINION:**
*An interpretation of La. R.S. 32:1252(50); La. R.S. 32:1261A(1)(s) & (t); La. R.S. 32:1261A1(k) and related statutes in the Motor Vehicle Franchise Act*

Dear Attorney General Landry:

The undersigned herein respectfully requests an Attorney General Opinion regarding the ability of a manufacturer or distributor of motor vehicles to legally lease motor vehicles directly to consumers and to perform repair services for vehicles under warranty directly without use of a dealer. Specifically, the issues presented are as follows:

A. Is it a violation of La. R.S. 32:1261A(1)(k)(i) and (ii) for a manufacturer or distributor to lease new vehicles directly to consumers?

B. May a manufacturer or distributor (or any subsidiary thereof) perform warranty services directly without using a dealer? La. R.S. 32:1261A(1)(s) and (t)

I. **Background of Louisiana Franchise Law:**

Title 32 of the Louisiana Revised Statutes is entitled, "Motor Vehicles and Traffic Regulation." La. R.S. 32:1251 begins, "The General Provisions Applicable to Motor Vehicles and Recreational Products" (Franchise Law) Specifically, La. R.S. 32:1251 is a declaration of public policy, wherein that particular statute provides:

EXHIBIT 6

June 4, 2020
Page 2

> The legislature finds and declares that the distribution and sale of motor vehicles and recreational products in the state of Louisiana vitally affects the general economy of the state, the public interest, and the public welfare, and that in order to promote the public interest, and the public welfare, and in the exercise of its police power, it is necessary to regulate business in Louisiana, in order to prevent frauds, impositions, and other abuses upon its citizens, <u>and avoid undue control of the independent motor vehicle dealer and recreational products by their motor vehicle manufacturing and distributive organizations and foster and keep alive vigorous and healthy competition, by prohibiting unfair practices by which fair and honest competition is destroyed or prevented</u>, and to protect the public against the creation or perpetuation of monopolies and practices detrimental to the public welfare, to prevent the practice of requiring the buying, leasing, or renting of special features, appliances, and equipment not desired or requested by the purchaser . . . <u>and prevent disruption of the system of distribution of motor vehicles</u> and recreational products to the public and prevent deterioration of facilities for servicing motor vehicles and keeping same safe and properly functioning . . . (<u>emphasis</u> added)

Simply put, La. R.S. 32:1251, *et seq.*, our Franchise Law has three principal purposes: (1) to protect the public in connection with the distribution and sale of motor vehicles; (2) to protect the dealers from unfair practices by their manufacturers and/or distributors of vehicles; and (3) prevent disruption of the system of distribution of motor vehicles.

La. R.S. 32:1253 provides for the establishment of the Louisiana Motor Vehicle Commission ("LMVC" or "Commission"). This Commission exists under the Executive Branch, and all the Commission members are appointed by the governor, including a chairman of the Commission, who is specifically appointed by the governor. La. R.S. 32:1253E provides:

> The commission is hereby vested with the powers and duties necessary and proper to enable it to fully and effectively carry out the provisions and objects of this Chapter, and is hereby authorized and empowered to make and enforce all reasonable rules and regulations and to adopt and prescribe all forms necessary to accomplish said purpose, and the enumeration of any power or authority herein shall not be construed to deny, impair, disparage, or limit any others necessary to the attainment thereof, provided no rule or regulation of the commission, including but not limited to Chapter 7 (Advertising) of Subpart 1 of Part V of Title 46, comprised of LAC 46:V:701 through 741, of the Louisiana Administrative Code, shall prohibit a dealer from making a monetary donation or contribution that does not directly involve the sale or lease of a motor vehicle in connection with an advertising campaign. A copy of all rules

June 4, 2020
Page 3

and regulations adopted by the commission shall be published in the Louisiana Administrative Code, as they may be amended, modified, or repealed from time to time.

In furtherance of 32:1253E, the LMVC has enacted regulations, including a definitional section. La. Admin. Code Part V entitled, "Automotive Industry."[1] The purpose of this letter is to ask your office to provide guidance for the Commission in enacting certain regulations which will clarify the intent of specific sections of La. R.S. 32:1251, *et. seq.*

Historically, the Franchise Law in Louisiana has been interpreted to mean that manufacturers and distributors (such as General Motors or Gulf States Toyota, respectively) could not sell or lease vehicles directly to the public. Instead, they had to distribute their products through franchised dealers. The franchise system has been developed throughout the United States, and each state has its own set of regulations regarding the relationship between dealers, on the one hand, and a manufacturers and distributors, on the other. Historically, all states have prohibited manufacturers or distributors from selling or leasing vehicles directly to the public. The purpose, as articulated in 32:1251, is to balance the playing field between very large manufacturers and local dealers. Since the manufacturers are the sole source of product, parts, etc., they have disproportionate bargaining power over the dealers. The statutes enacted and, in particular, La. R.S. 32:1261, and its many subparts, are designed to protect the dealers from unfair practices from the manufacturers or distributors.

The LMVC is tasked, in part, with maintaining that balance between dealers and their franchisors. The Motor Vehicle Commission has jurisdiction to rule on alleged violations of the Franchise Law, and regularly does so. A three-member panel composed of non-dealers, who are also Commissioners, makes evidentiary legal and factual determinations in these disputes. Findings of the three-member panel and the Commission may be appealed to the Jefferson Parish District Court (24th JDC). On other occasions, when a potential violation by a manufacturer is brought to the attention of the Commission, the Commission Staff will issue orders on its own prohibiting the illegal activity. The Commission has attorneys on retainer and regularly consults with these attorneys regarding interpretation of the statutes.

---

[1] Definitions are found in Section §101.

June 4, 2020
Page 4

## II. Analysis of the Issues:

### A. Is it a violation of La. R.S. 32:1261A(1)(k)(i) and (ii) for a manufacturer or distributor to lease new vehicles directly to consumers?

Perhaps as important as what the current Franchise Law provides is what the current Franchise Law does not say. La. R.S. 32:1252 contains 74 definitions to be used in the Franchise Law. Many of these definitions have subparts. One definition is missing. It is the definition of "lease." Although it is hard to theorize a negative, it is safely assumed that the reason "lease" is not contained is that, when most of the definitions were drafted, leasing of vehicles was not a prevalent practice as it is today. "Motor Vehicle Lessor"(36) is defined, as is "Motor Vehicle Lessor Franchisor" (38), but those definitions describe an entity without defining a lease.[2]

In addition, the Commission has enacted its own regulations, which are cited at Louisiana Administrative Code in Title 46. They also include a definitional section in §101. That definitional section, presumably a supplement to La. R.S. 32:1252, does not contain a definition of "lease" either.

Historically, the prohibitions against manufacturers and distributors contained in La. R.S. 32:1261, and its many subparts, apply to both sale and lease transactions, without them necessarily saying so. Indeed, under Louisiana's version of the Uniform Commercial Code (UCC), if a lease contains an option on the part of the lessee of the vehicle to purchase at the end of the lease, it is considered a disguised sale, meaning that the lease payments are simply another equivalent of note payments secured by a lien on the vehicle in a purchase transaction. La. R.S. 10:1-203. Delivery to a Louisiana consumer of a leased vehicle is also a taxable event subject to La. R.S. 47:302, if there is a "sale, use, lease or rental of tangible personal property" in the State. A tax is added to the monthly payment of every leased vehicle.

La. R.S. 32:1252, however, does have a definition of "retail sale." La. R.S. 32:1252(50) provides:

> "Retail sale" or "sale at retail" means the act or attempted act of selling, bartering, exchanging, <u>or otherwise disposing of a motor vehicle</u>, recreational product, or specialty vehicle to an ultimate purchaser for use as a consumer. (<u>emphasis</u> added)

La. R.S. 32:1252(57) defines "ultimate purchaser" and describes of one who purchases a vehicle for something other than resale. There is no definition of "ultimate lessee," who would lease a vehicle for something other than "lease." The point is that the word "lease" has just been absent from the regulations, but nevertheless, the regulations have been applied uniformly to lease

---

[2] "Lease facilitator" is defined in Definition No. 21, but it assumes what is a lease is without defining it.

June 4, 2020
Page 5

___

transactions, as well as purchase transactions. For decades, it was considered by the industry and the Commission that "otherwise disposing of" would apply to leases.

This issue came to a head in 2019 when the Commission Staff advised the Louisiana Automobile Dealers Association ("LADA") that it had issued a license to Tesla Trust, a subsidiary of the manufacturer Tesla, to be an out-of-state leasing company to lease vehicles directly to consumers in Louisiana. There was no hearing where anyone could oppose the proposed license. In conversations with the Commission Staff, the Tesla Trust license was analogized to the Honda Trust license. The important difference, however, is that Honda Trust, in all cases, leases vehicles through the Honda dealer network.

The prohibition against direct sales has historically been in La. R.S. 32:1261, where many other specific prohibitions against manufacturers and distributors are found. ~~The previous~~ La. R.S. 32:1261A(1)(k)(i) provides:

> It shall be a violation of this Chapter:
>
> (1) for a manufacturer, a distributor, a wholesaler, distributor branch, factory branch, convertor or officer, agent or other representative thereof:
>
> \* \* \*
>
> **(k)(i) To sell or offer to sell a new or unused motor vehicle directly to a consumer except when any one of the following conditions is met:**

(**emphasis** added)

The conditions are inapplicable.[3]

It should be noted that the aforementioned subsection was amended by the Louisiana Legislature at the request of LADA in 2017 as a means to strengthen the prohibition on a manufacturer to sell direct. Despite numerous conversations with the Commission during the process where LADA provided them language for comment, at no time during the course of the process of amending Subpart (k) did the Commission ever suggest that leases would not continue to be included in this prohibition. This is the issue presently presented for review.

___

[3] The conditions are:

(aa) Operating an existing, licensed, and franchised motor vehicle dealership for a reasonable period, not to exceed two years.

(bb) Operating an existing, licensed, and franchised motor vehicle dealership which is for sale to any qualified independent person at a fair and reasonable price, not to exceed two years.

(cc) Operating in a bona fide relationship in which a person independent of a manufacturer has made a significant investment subject to loss in the dealership, and can reasonably expect to acquire full ownership of such dealership on reasonable terms and conditions.

LMVC000064

June 4, 2020
Page 6

If one was to read the definition of "retail sale" found in 1252(50) together with the updated (k)(1) prohibition, it would read as follows:

(k)(i) To sell, barter, exchange, or otherwise dispose of a new or unused motor vehicle, or to offer to sell, barter, exchange, or otherwise dispose of a new or unused motor vehicle, directly to a consumer...

As you can see, when read together as one would, the prohibition against a manufacturer or related entity like Tesla circumventing the dealer network is very broad, with only very few narrow exceptions cited in the same subpart (which again are inapplicable to this discussion).

The intent of La. R.S. 32:1261A(1)(k) was and is to prevent manufacturers and distributors from circumventing the dealer network by distributing vehicles directly to the consumer. We herein respectfully request an opinion of the Attorney General to assist the Commission in applying the applicable definition of "retail sale," which includes (as quoted *supra*) the phrase "or otherwise disposing of a motor vehicle."

**B.     May a manufacturer or distributor (or any subsidiary thereof) perform warranty services directly without using a dealer? La. R.S. 32:1261A(1)(s) and (t)**

At the same time that the LMVC advised certain dealers and the LADA that it had allowed Tesla Trust to be licensed as an out-of-state entity, it also said that it would allow Tesla Trust to open a warranty repair center in New Orleans. This decision runs afoul of several other prohibitions contained in La. R.S. 32:1261A(1). The LMVC has labeled the warranty repair center a "satellite fleet repair center" under La. R.S. 32:1261A(1)(t). As such, it says the warranty repair center is not under the jurisdiction of the LMVC by citing La. R.S. 32:1261A(1)(t)(v) and (vi). Because it is within the "fleet" exception, the unregulated facility is only "allowed" to work on the lease "fleet," which are vehicles leased in the State by Tesla Trust. The subparts of (t) relied on by the Commission are as follows:

(v) The commission has no authority over a fleet owner or an emergency services company or emergency services related company with respect to the requirements of this Subparagraph.

(vi) A repair facility of a fleet owner authorized pursuant to this Subparagraph to perform warranty repairs shall not be deemed a satellite warranty and repair center as defined in R.S. 32:1252 and shall not be required to be licensed by the commission pursuant to R.S. 32:1254.

This law was substantially revised in 2015 at the request of major fleet owners, such as Entergy, Turner Industries, and ExxonMobil. There was also support for changing the law from large trucking companies based in the state. A third group was short term rental car companies,

June 4, 2020
Page 7

such as Hertz and Enterprise. These entities with considerable numbers of vehicles wanted to maintain the warranty on their vehicles but did not want to have to take so many vehicles to an established dealer for warranty repairs. An exception to the general prohibition contained in the first line of Subpart (t)(i) was established for these entities. These entities, such as Entergy, Hertz or ExxonMobil, are <u>not</u>, however, "manufacturers or distributors" of new vehicles. Tesla is.

Accordingly, there are several key elements to Subpart (t), as supplemented by Subpart (s), which is found just above Subpart (t), in 32:1261. Reading Subpart (t) with Subpart (s), it makes it clear that a manufacturer and any subsidiary are in a special class of companies forbidden from operating a warranty repair center. The main prohibition in Subpart (t) is in its first sentence. It provides:

> §1261. Unauthorized acts
>
> A.   It shall be a violation of this Chapter:
>
> (1)   For a manufacturer, a distributor, a wholesaler, distributor branch, factory branch, converter or officer, agent, or other representative thereof:
>
> \* \* \*
>
> **(t)(i)   To operate a satellite warranty and repair center, to authorize a person to perform warranty repairs, including emergency repairs, who is not a motor vehicle dealer, . . .**

(**emphasis** added)

A reading of this in the whole means that entities such as Entergy and ExxonMobil, that are not dealers, may perform repairs on their vehicles and maintain the warranty on those vehicles. That said, the prohibition against manufacturers performing warranty work is clear. Tesla Trust, however, is a subsidiary of Tesla. It, too, is prohibited from performing warranty work directly. A manufacturer or distributor cannot simply label itself or a subsidiary a fleet warranty center to avoid this prohibition. Subpart (s) of 32:1261A(1) provides:

> §1261. Unauthorized acts
>
> A.   It shall be a violation of this Chapter:
>
> (1)   For a manufacturer, a distributor, a wholesaler, distributor branch, factory branch, converter or officer, agent, or other representative thereof:

June 4, 2020
Page 8

\* \* \*

    (s) To use any subsidiary, affiliate, or any other controlled person or entity, or to employ the services of a third party, to accomplish what would otherwise be illegal conduct under this Chapter on the part of the manufacturer or distributor.

Perhaps ExxonMobil can perform warranty repair services beyond the authority of the Commission, but a manufacturer or a distributor may not directly create a subsidiary to do the warranty work. To believe otherwise would simply read out the first line of Subpart (t) and the entirety of Subpart (s) from our law.

### III.   Conclusion:

    A.     A manufacturer or distributor or related entity may not circumvent the Louisiana Franchise Law by leasing motor vehicles directly to consumers within the State of Louisiana. A lease is one way to dispose of a vehicle other than by selling. The definition of "retail sale" and the prohibition of La. R.S. 32:1261A(1)(k) applies to leasing activities.

    B.     Manufacturers, distributors or similar entities are specifically prohibited from operating a satellite warranty repair center. This function is reserved to franchised dealers. True "fleet" entities envisioned by the exceptions to R.S. 32:1261A(1)(t), such as ExxonMobil, Entergy, Hertz or Enterprise, are not manufacturers or distributors. The mere fact that a manufacturer elects to us a wholly-owned subsidiary to operate a satellite warranty center does not insulate that manufacturer or its subsidiary from the prohibition of La. R.S. 32:1261A(1)(s) and (t).

We would respectfully request an opinion from the Attorney General consistent with the foregoing.

Sincerely,

*[signature]*

Phillip R. DeVillier