## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

TESLA, INC., ET AL                 CIVIL ACTION NO. 2:22-CV-02982
         PLAINTIFFS

V.                                    JUDGE SARAH S. VANCE

LOUISIANA AUTOMOBILE
DEALERS ASSOCIATION, ET AL          MAG. DONNA PHILLIPS CURRAULT
         DEFENDANTS

## MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS OF SEVEN DEALERSHIP DEFENDANTS AND SEVEN LMVC COMMISSIONERS IN THEIR PRIVATE CAPACITIES

Defendants, T & J Ford, Inc. ("T & J"), Golden Motors, LLC ("Golden Motors"), LeBlanc Automobiles, L.C. (incorrectly named as "Leblanc Automobiles, Inc.") ("LeBlanc Automobiles"), Holmes Motors, LLC ("Holmes Motors"), Morgan Buick GMC Shreveport, Inc. (incorrectly named as "Morgan Pontiac, Inc.") ("Morgan Buick"), Airline Car Rental, Inc. ("Airline"), Shetler-Corley Motors, Limited ("Shetler-Corley Motors") **(collectively "Dealership Defendants")**, V. Price Leblanc, Jr., Keith P. Hightower, Keith M. Marcotte, Wesley Randal Scoggin, Donna S. Corley, Terryl J. Fontenot, and Maurice C. Guidry, in their private capacities **(collectively the "Private Defendants")**, respectfully submit Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss.  As shown herein, the Complaint filed by plaintiffs, Tesla, Inc., Tesla Lease Trust, and Tesla Finance, LLC (collectively the "Tesla Plaintiffs"), fails to state any claim against the Dealership Defendants or Private Defendants upon which relief can be granted.

## SUMMARY OF FACTS, COUNTS, AND ARGUMENTS

In 2017, the Louisiana Legislature passed legislation that made it illegal for any automobile manufacturer, including plaintiff, Tesla, Inc., to sell cars directly to a consumer in Louisiana (the "Direct Sales Ban").  *See* La. Rev. Stat. § 32:1216(A)(1)(k)(i); Rec. Doc. 1, ¶¶ 134-

36. Louisiana law also prohibits any manufacturer, including Tesla, Inc., from operating a satellite warranty and repair center ("Warranty Repair Ban"). *See* La. Stat. § 32:1261(A)(1)(t)(i); Rec. Doc. 1, ¶ 143. Thus since 2017, Tesla, Inc. could not legally sell cars in Louisiana directly to consumers,[1] or perform warranty work in Louisiana.

**In Counts III and IV**, Tesla, Inc.[2] directly challenges the constitutionality of the Direct Sales Ban and Warranty Repair Ban. Rec. Doc. 1, ¶¶ 249-74. Specifically, Tesla, Inc. asserts equal protection and commerce clause challenges to "vindicate" its rights under the "U.S. Constitution" to sell and service Tesla vehicles in Louisiana. *Id.*, p. 3. **The Dealership Defendants and Private Defendants are not parties to these constitutional claims**.

In 2018, Tesla, Inc. tried to circumvent Louisiana's Warranty Repair Ban by opening a service center in New Orleans. *Id.*, ¶ 149. On July 11, 2018, the New Orleans Advocate ran an article disclosing Tesla, Inc.'s plans. Rec. Doc. 1, Ex. 3.[3] Tesla, Inc. then approached the staff at the Louisiana Motor Vehicle Commission ("LMVC"). At that time, the LMVC Staff informed Tesla, Inc. what Tesla, Inc. already knew – Louisiana's Warranty Repair Ban prohibited Tesla, Inc. from providing warranty repair work in Louisiana.

The LMVC Staff, however, informed Tesla, Inc. that it was not illegal for a lessor of Tesla vehicles to provide service and warranty repair work to its own fleet of leased vehicles. So, in 2019, Tesla Lease Trust, a separate entity distinct from Tesla, Inc., applied for and obtained a lessor's license from the LMVC. Rec. Doc. 1, ¶ 21. Tesla Lease Trust, not Tesla, Inc., then opened the warranty repair service center to purportedly perform service and warranty repair work

---

[1]     Tesla, Inc. can and does sell cars to Louisiana consumers via the internet.

[2]     As discussed in further detail below, the three Tesla Plaintiffs improperly refer to themselves collectively throughout the Complaint as "Tesla" and then join together as plaintiffs in all counts, even where it is apparent that not all of them have standing or any injury.

[3]     The exhibits referred to as "Ex. 1" through "Ex. 7" are attached to the Complaint.

only on Tesla Lease Trust's fleet of leased vehicles. *Id.*, ¶ 23. Thus, since 2019, Tesla Lease Trust has been licensed by the LMVC to legally perform warranty repairs to Tesla vehicles that were part of Tesla Lease Trust's fleet of leased vehicles.

Beginning in 2020, the LMVC's Executive Director issued multiple subpoenas to Tesla Lease Trust to investigate whether Tesla Lease Trust was performing warranty repairs on Tesla vehicles that were not part of its fleet of leased vehicles. Rec. Doc. 1, ¶¶ 174-76; *see also* Ex. 7. Tesla Lease Trust refused to produce all subpoenaed records, so after a hearing, the LMVC ordered Tesla Lease Trust to produce its records. *Id.*, ¶¶ 178, 189, 194.

Tesla Lease Trust then exercised its rights under Louisiana law to file suit in the 24th Judicial District Court to seek judicial review of the LMVC's Order. *Id.*, ¶ 197. Tesla Lease Trust and the LMVC agreed that during the pendency of that state court review proceeding, the LMVC would "stay" the effect of the subpoena and order. *Id.*, ¶ 192. The state court review proceeding is still pending. *Id.*, ¶ 200.

**In Count II**, Tesla Lease Trust[4] asserts a Due Process claim against the LMVC Commissioners in their official capacity, challenging the constitutionality of the LMVC and its exercise of control over Tesla Lease Trust. *Id.*, ¶¶ 223-48. Incredibly, despite being statutorily allowed to seek judicial review of LMVC's order in state court, Tesla Lease Trust claims it has been deprived of its constitutionally protected Due Process Rights. *Id.* **The Dealership Defendants and Private Defendants are also not parties to this constitutional claim**.

---

[4]     As noted, all Tesla Plaintiffs join in this count, but the relief sought could only apply to Tesla Lease Trust, as it is the only entity licensed to perform "leasing and servicing activities" in Louisiana, ordered to respond to the subpoenas, and sought judicial review in the state court proceeding.

In Counts I, V, and VI,[5] the Tesla Plaintiffs attempt to state claims for alleged Federal and State Antitrust violations, as well as Unfair Trade Practices under State law. In doing so, they weave a convoluted, misleading, and baseless tale of conspiracy between the Louisiana Automobile Dealers Association ("LADA"), LMVC Commissioners in their official capacity, the Private Defendants, and the Dealership Defendants. *Id.*, ¶¶ 203-22; 275-304. The simple, undisputed and undeniable facts are: (1) The LADA contends that Tesla Lease Trust is violating Louisiana law by leasing and servicing its fleet of leased vehicles in Louisiana; (2) The LMVC and the LMVC Commissioners in their official capacity disagree with the LADA and maintain that Tesla Lease Trust can lease and service its fleet of leased vehicles; and (3) The Private Defendants and Dealership Defendants are not alleged to have taken any specific actions. Somehow based upon the disparate positions taken by the LADA and LMVC, and the LMVC's action in ordering Tesla Lease Trust to respond to its Staff's subpoena, the Tesla Plaintiffs claim that the Defendants have violated antitrust and unfair competition laws.

When stripped of its countless irrelevant, self-aggrandizing, and conclusionary allegations, the Complaint states nothing more than constitutional challenges by Tesla, Inc. to Louisiana's Direct Sales Ban and Warranty Repair Ban. The Complaint utterly fails to state antitrust and unfair competition claims against the Dealership Defendants or Private Defendants. The Complaint does not contain a single, specific factual allegation to demonstrate that the Dealership Defendants or Private Defendants engaged in any wrongdoing at all, much less a conspiracy that would subject them to antitrust or unfair competition liability to any of the Tesla Plaintiffs **(Counts I, V, and VI)**.

---

[5]     The Tesla Plaintiffs also attempt to state a claim for "Declaratory Relief," Count VII, which merely duplicates the relief requested in their prior counts.

Furthermore, the Tesla Plaintiffs' state law claims for Antitrust Violations and Unfair Trade Practices **(Counts V and VI)** are subject to a one-year prescriptive period, and are prescribed on the face of the Complaint. As plainly demonstrated by an affidavit filed by Tesla's counsel in the ongoing 24th JDC suit, the Tesla Plaintiffs have been aware of the facts that serve as the basis of their state law claims for well over a year before filing their Complaint. Accordingly, the state law claims that the Tesla Plaintiffs attempt to state against the Dealership Defendants and Private Defendants should be dismissed with prejudice.

## FACTUAL ALLEGATIONS OF THE COMPLAINT

I. **GENERAL ALLEGATIONS.**

A. **The "Tesla" Plaintiffs' Case of Misdirection.**

In the first unnumbered paragraph, the Tesla Plaintiffs set the stage for their tale of an imaginary conspiracy. First, they proclaim that they are bringing this Complaint to protect Louisianians' ability to buy, lease, and service Tesla vehicles. Rec. Doc. 1, pp. 3-4. Louisianians, however, can buy Tesla vehicles online from Tesla, Inc.; lease Tesla vehicles from Tesla Lease Trust; and have Tesla Lease Trust provide warranty work to their leased Tesla vehicles. The only thing a Louisianian who owns a Tesla vehicle cannot legally do, is get warranty service on his or her Tesla in Louisiana. Thus, this suit is not about protecting Louisiana residents.

The Tesla Plaintiffs' second act of misdirection in the first unnumbered paragraph comes when they collectively define the three Tesla Plaintiffs as "Tesla." Through this one slight of the pen, Tesla, Inc. hopes to convince this Court that actions taken by the LMVC against Tesla Lease Trust somehow constitute a statewide antitrust conspiracy directed at Tesla, Inc. Nothing is further from the truth.

B.    **There Are Three Distinct Plaintiffs In This Case.**

Tesla, Inc. is identified by name in a mere five of the over three-hundred paragraphs of the Complaint. *Id.*, ¶¶ 1, 20, 22, 108, 178.[6] Tesla, Inc. is a manufacturer of electric vehicles. Rec. Doc. 1, ¶ 20. Tesla, Inc. does not use local, in state dealers to sell, lease, or service Tesla vehicles. *Id.*, ¶ 2. Tesla, Inc. itself provides service and support to owners of Tesla vehicles. *Id.*, ¶ 20. Tesla, Inc. admits that under Louisiana law, a manufacturer like Tesla, Inc. is banned from directly selling or performing warranty work on vehicles in Louisiana. *Id.*, ¶¶ 8, 143.

Tesla Lease Trust is mentioned in only twenty-five paragraphs of the Complaint. *Id.*, p. 3, ¶¶ 21, 22, 172, 174-76, 178, 180, 186-88, 190-94, 196-98, 210, 235, 240, 283, 290. Tesla Lease Trust is a Delaware Statutory Trust that is purportedly an owner of a fleet of Tesla vehicles that it leases to consumers in Louisiana. *Id.*, ¶ 21. In 2019, the LMVC issued Tesla Lease Trust a license to lease vehicles in Louisiana. *Id.*

Tesla Finance, LLC is specifically identified in only two paragraphs of the Complaint. *Id.*, ¶¶ 21-22. Tesla Finance, LLC, alleged to be a wholly owned subsidiary of Tesla, Inc., purportedly manages the "leasing program" for Tesla Lease Trust. *Id.*, ¶¶ 21-22. Tesla Finance, LLC claims to be the "beneficial owner of the leasing assets" held by Tesla Lease Trust. *Id.*

Conversely, the three Tesla Plaintiffs, who define themselves collectively as "Tesla," refer to themselves as a collective group **over 240 times** in the Complaint. Rec. Doc. 1. Incredibly, "Tesla" alleges that it is a "fleet owner," not subject to the LMVC's authority when all

---

[6]    The first paragraph of the Complaint contains an anomalous reference "Tesla *Motors*, Inc." an entity which is not a plaintiff and is not mentioned anywhere else in the Complaint. Rec. Doc. 1, p. 3.

manufacturers must be licensed with the LMVC to do business in Louisiana.[7]  *Id.*, ¶¶ 144-145.

Collectively "Tesla" attempts to assert constitutional challenges and damage claims against multiple defendants, including, LADA, LMVC Commissioners in their "official" and "private" capacities, and numerous Louisiana automobile dealerships.  Confusingly, the Tesla Plaintiffs sometimes refer to "Tesla" collectively in the same sentence that also refers to one of them, individually.  *See* for example ¶ 172 (alleging LMVC "targeted *Tesla*" by commencing "an alleged investigation of *Tesla Lease Trust*"); ¶ 176 (alleging an LMVC subpoena "appeared to target *Tesla Lease Trust* over *Tesla's* performance of warranty repairs…"); ¶ 210 (alleging LMVC threatened "*Tesla's* participation in the market for leasing and warranty servicing" by "its issuing of subpoenas to *Tesla Lease Trust* … relating to *Tesla's* warranty work and leasing even though *Tesla* was a 'fleet owner'…"); ¶ 283 (same).

C.  **The Tesla Plaintiffs Allege Federal Constitutional Claims Against the LMVC Commissioners In their Official State Capacity.**

The Tesla Plaintiffs assert three constitutional claims against the LMVC Commissioners in their official capacities.  In Count II, the Tesla Plaintiffs claim that the "composition" of the LMVC, who is not a party, is unconstitutional and allegedly violates the Tesla Plaintiffs' Due Process rights under the Fourteenth Amendment.  *Id.*, ¶¶ 223-48.  In Count III and IV, the Tesla Plaintiffs seek to have the Direct Sales Ban and the Warranty Repair Ban deemed unconstitutional because they purportedly violate the Equal Protection Clause of the Fourteenth Amendment and the Commerce Clause.  *Id.*, ¶¶ 249-74.  Again, none of these constitutional challenges are brought against the Dealership Defendants or Private Defendants.

---

[7]     While the complaint does not acknowledge it, in February of 2021, the LMVC issued Tesla, Inc. a Louisiana manufacturer's license.

**D.    The Tesla Plaintiffs Also Allege Antitrust and Unfair Trade Practice Claims Against the Commissioners In Their Personal Capacity and Their Dealerships.**

As to the Dealership Defendants and the Private Defendants, the Tesla Plaintiffs' claims are limited to Count I "Violation of Federal Antitrust Law", Count V "Violation of State Antitrust Law," Count VI "Violation of State Unfair Trade Practices Act," and Count VII "Declaratory Relief."  Plaintiffs contend that the private trade association, LADA, its alleged dealership members, and the LMVC Commissioners, "publicly and privately opposed "Tesla" doing business in Louisiana because "Tesla" does not use franchised dealers to sell, lease, or service "Tesla" vehicles – and consequently [LADA] views "Tesla" as a competitive threat in those markets."  *Id.*, ¶ 27.  The Tesla Plaintiffs contend that LADA engaged in lobbying activity for legislation to bar "Tesla" from engaging in direct sales to Louisiana consumers; opposed "Tesla" "from leasing Tesla vehicles in Louisiana, including through collusion with the [non-party LMVC] acting through [LMVC Commissioners]; and opposing the performance by "Tesla" of "warranty repairs on Tesla vehicles in Louisiana, including through collusion with the [non-party LMVC] acting through [LMVC Commissioners]."  *Id.*, ¶ 28.  Plaintiffs contend that a majority of the LMVC Commissioners are also "members of the [LADA]."  *Id.*, ¶ 29.

**II.    SPECIFIC FACTUAL ALLEGATIONS AS TO DEALERSHIP DEFENDANTS AND PRIVATE DEFENDANTS.**

**A.    Allegations Regarding Relationship Between Dealership Defendants and Private Defendants.**

The Complaint vaguely infers some relationship between the Dealership Defendants and Private Defendants.  For example, the Tesla Plaintiffs allege that defendant, V. Price LeBlanc, Jr., is an LMVC Commissioner and "listed on [LMVC's] directory as a licensee at" LeBlanc Automobiles, either or both of whom are alleged to be "members" of LADA.  *Id.*, ¶¶ 52-55.  The Complaint contains no allegations explaining the relationship between Mr. LeBlanc

and LeBlanc Automobiles, other than speculatively referring to it as "his dealership." *Id.*, ¶ 55. The same is true for every other Dealership Entity. *See* ¶¶ 64-67 (regarding Mr. Hightower and Holmes Motors); ¶¶ 68-71 (regarding Ms. Corley and Shetler-Corley Motors); ¶¶ 72-75 (regarding Mr. Fontenot and T & J Ford); ¶¶ 76-79 (regarding Mr. Guidry and Golden Motors); ¶¶ 80-83 (regarding Mr. Marcotte and Morgan Buick).

As to Wesley Randal Scoggin, there are no allegations at all regarding his purported relationship to Airline Car Rental, and no allegations that either of them are members of LADA. *Id.*, ¶¶ 88-89. The Tesla Plaintiffs apparently concede that Mr. Scoggin and Airline Car Rental *are not* LADA members because they are listed under the heading "Six Additional Licensee Commissioners." *Id.*, pp. 11, 15. The Tesla Plaintiffs also admit that Mr. Scoggin and Airline Car Rental, *are not* "in direct competition with" the Tesla Plaintiffs. *Id.*, ¶ 40.

Even assuming the Complaint adequately alleges ownership or control of the Dealership Defendants by the Private Defendants, and that some of the Dealership Defendants compete with the Tesla Plaintiffs, the Complaint does not otherwise describe any specific wrongful acts by the Dealership Defendants or the Private Defendants. The Complaint contains no allegation that any of the Dealership Defendants or the Private Defendants were personally involved in, or approved any action taken by the LADA. Rather, as the Tesla Plaintiffs' theory goes, the Dealership Defendants and/or the Private Defendants are somehow responsible for the alleged actions of the LADA, simply by virtue of some of their alleged memberships in the LADA.

**B.**   **Allegations Regarding the Direct Sales Ban.**

The Tesla Plaintiffs claim that LADA, unspecified dealership defendants, and unspecified LMVC Commissioners "successfully lobbied" for a change in Louisiana law in 2017, specifically La. Rev. Stat. § 32:1216(A)(1)(k)(i), to prohibit direct sales by manufactures, such as

Tesla, Inc. (the "Direct Sales Ban.") *Id.*, ¶¶ 131, 137. But the Tesla Plaintiffs admit that these lobbying efforts and the alleged resulting change in the law <u>are not part of their antitrust or unfair trade practices claims against the Dealership Defendants and Private Defendants</u>. *Id.*, n. 17, p. 23. Even if they were, the Complaint contains no allegations that any of the Dealership Defendants or Private Defendants participated in the alleged lobbying efforts.

### C.   <u>Allegations Regarding The Warranty Repair Ban.</u>

The Tesla Plaintiffs go on to allege that in addition to the Direct Sales Ban, the Dealers and the [LADA] are acting to prevent "Tesla" from servicing vehicles purchased by Louisiana residents. *Id.*, ¶¶ 140-41. The Tesla Plaintiffs claim that under an exception to La. Rev. Stat. § 32:1261(A)(1)(t)(i), "Tesla" is a "fleet owner," and as such, its warranty and repair services in Louisiana are not subject to oversight by LMVC. *Id.*, ¶¶ 143-44. The Tesla Plaintiffs vaguely claim that the LADA, unspecified dealership defendants, and non-party LMVC have "engaged in a concerted effort to reinterpret state laws to prohibit "Tesla" in Louisiana. *Id.*, ¶ 147.

This argument fails for multiple reasons. First, the law *never* permitted Tesla, Inc., a manufacturer, to perform warranty and repair services in Louisiana on vehicles sold to and owned by third parties, including Louisiana residents. It states:

A. **It shall be a violation of this Chapter**:

(1) **For a manufacturer**, a …

(t)(i) **To operate a satellite warranty and repair center, to authorize a person to perform warranty repairs, including emergency repairs**, who is not a motor vehicle dealer, **fleet owner**, or an emergency services company ….

La. Rev. Stat. § 32:1261(A)(1)(t)(i) (emphasis added). The statute contains an exception such that a "fleet owner," which is defined to mean "**a person**, including a governmental entity, who is approved and authorized by a manufacturer to perform warranty repairs and **owns or leases**

**vehicles for its own use or a renting or leasing company that rents, maintains, or leases vehicles to a third party**" can perform warranty repairs *to its own fleet of vehicles. Id.* Thus, even though Tesla Lease Trust qualifies as a "fleet owner," the statute never permitted Tesla, Inc. to make warranty repairs or perform warranty services on Tesla vehicles.

Second, even if the Tesla Plaintiffs could demonstrate that LADA had an agenda to "reinterpret" the statute to prohibit Tesla Lease Trust from making warranty repairs, the Complaint contains no facts whatsoever indicating any involvement by the Dealership Defendants or the Private Defendants. The Tesla Plaintiffs rely on emails between the LADA, *non-party dealerships*, *non-party* LMVC and its *non-party* executives, to support their conspiracy theory. *Id.*, ¶¶ 149-156; Exs. 2, 3, and 4, attached to Complaint. As with their allegations regarding the Direct Sales Ban, none of the Dealership Defendants or the Private Defendants sent or were even copied on the emails. *Id.* Furthermore, there are no factual allegations in the Complaint that the LMVC agreed with or enacted any of the regulations proposed by LADA. *Id.*

Rather, the allegations in the Complaint make it clear that <u>LMVC did not agree with LADA's interpretation of the Direct Sales Ban or Warranty Repair Ban</u>. The Tesla Plaintiffs allege that LADA had a Louisiana State Representative seek a formal opinion from the Attorney General to interpret state law to prohibit Tesla Lease Trust from leasing and servicing its leased vehicles in Louisiana because the manufacturer, Tesla, Inc., did not have a licensed dealership in Louisiana. *Id.*, ¶¶ 162-63; Ex. 6.

The LMVC, however, had previously issued Tesla Lease Trust a Lessor's license, and the Tesla Plaintiffs candidly admit, that when the Attorney General sought the LMVC's opinion on the matter, LMVC officially disagreed with the LADA's position on the Warranty Repair Ban and advised the Attorney General that Tesla Lease Trust was lawfully licensed to lease

vehicles and to service its fleet of leased vehicles in Louisiana. *Id.*, ¶¶ 164-170; Ex. 1. These facts, admitted to by the Tesla Plaintiffs, contradict their contention that LADA somehow controls the LMVC Commissioners, and that there is some "anti-Tesla" conspiracy between LADA, the LMVC, Dealership Defendants, and Private Defendants.

### D.    Allegations Regarding LMVC's Investigative Subpoenas to Tesla Lease Trust.

Stripped of all unsupportive, conclusory, and speculative allegations, the Complaint alleges a discreet set of facts to purportedly support an "anti-Tesla" conspiracy involving LMVC and its Commissioners. The Tesla Plaintiffs contend that in August 2020, *non-party* LMVC, acting through its *non-party* Executive Director, began an allegedly unlawful "investigation of Tesla Lease Trust" and its leasing and servicing activities in Louisiana. *Id.*, ¶¶ 172-74. At that time, the LMVC's Executive Director issued an investigative subpoena to Tesla Lease Trust seeking records regarding its activities in Louisiana. *Id.*, ¶ 174. Tesla Lease Trust responded to the subpoena. *Id.* The Tesla Plaintiffs allege that the LMVC's Executive Director then issued a second subpoena, which was withdrawn by mutual agreement. *Id.*

The Tesla Plaintiffs further allege that on February 12, 2021, the LMVC's Executive Director issued a third investigative subpoena to Tesla Lease Trust regarding "warranty repairs in alleged violation of La. Stat. § 32:1261(A)(1)(t)(i). *Id.*, ¶¶ 174-75; Ex. 7. The Tesla Plaintiffs contend that *non-party* LMVC, acting through its *non-party* Executive Director, apparently adopted the LADA's strained interpretation of "fleet owner." *Id.*, ¶¶ 176-77. As the Tesla Plaintiffs' argument goes, because "Tesla" purports to be a "fleet owner," the LMVC was without authority to investigate whether Tesla Lease Trust was servicing non-leased vehicles in violation of Louisiana law. *Id.*, ¶¶ 178-79. On that basis, Tesla Lease Trust refused to produce documents in response to the third subpoena. *Id.*, ¶ 178.

The Tesla Plaintiffs attempt to paint LMVC's investigative actions as some change in its position to align itself with LADA's position, but it is readily apparent this is not the case. *See* Ex. 1. LMVC has always contended that Tesla Lease Trust could service its fleet of leased vehicles, and the LMVC had the authority to investigate a licensed lessor, such as Tesla Lease Trust, for allegedly providing warranty work to vehicles outside of its fleet.

In any event, in accordance with LMVC's administrative procedures, *non-party* LMVC's Executive Director "filed a motion to compel before the Commission requesting that the Commission order Tesla Lease Trust to respond to the February 12, 2021, subpoena." *Id.*, ¶ 180. Tesla Lease Trust attempted to continue the hearing because of alleged incomplete responses to its public records requests and because Tesla Lease Trust allegedly would not "receive a fair and impartial adjudication before" the LMVC. *Id.*, ¶¶ 187-88. That request was denied by LMVC. *Id.*, ¶ 189. The LMVC then "ordered Tesla Lease Trust to respond" to the subpoena. *Id.*, ¶ 191. However, LMVC did agree to stay "Tesla Lease Trust's supposed obligation to comply with the February 12, 2021, subpoena to allow Tesla Lease Trust to seek judicial review of the Commission's ruling granting the motion to compel *filed by its Executive Director*." *Id.*, ¶ 192.

### E.     Tesla Lease Trust's Petition for Judicial Review Filed More than One Year Ago on August 26, 2021.

On August 26, 2021, Tesla Lease Trust filed a "petition for judicial review" in state court challenging the LMVC subpoenas. *Id.*, ¶¶ 197-202; *see also* Exhibit "A," Petition for Judicial Review and its attachments, attached hereto.[8] That state court petition, that was brought solely by Tesla Lease Trust, remains pending. *Id.*, ¶¶ 197-202. None of the Dealership Defendants, LMVC Commissioners, or Private Defendants are parties to that proceeding. *Id.* Yet,

---

[8]     This Court may properly consider the Petition for Judicial Review and its incorporated attachments on a Rule 12(b)(6) motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

here, the Tesla Plaintiffs allege that somehow the "state court proceedings are evidence of the ongoing unlawful conspiracy to bar Tesla[9] from doing business in Louisiana." *Id.*, ¶ 202.

Notably, Tesla Lease Trust made many of the same arguments in its Petition for Judicial Review, filed over a year ago, as the Tesla Plaintiffs do in this Complaint. *See* Exhibit "A." In support of its contention that it had been deprived of due process, Tesla Lease Trust urged in its August 26, 2021 Petition, that LADA sought to "block Tesla from operating in Louisiana" and due to their association with LADA, the LMVC Commissioners were "inherently biased" against Plaintiffs. *Id.*, ¶¶ 10-11, 18, 21, 22, 28; 48-54. The same arguments, facts, and documents referred to in this Complaint are also alleged in and attached to the May 14, 2021 Affidavit of Plaintiffs' counsel, Mark R. Beebe, which was attached to the Petition.[10] *See* Exhibit "3," attached to Exhibit "A." Thus, it is readily apparent that Plaintiffs have known of these alleged matters for well over a year.

In any event, the <u>only</u> factual allegations attempting to tie LMVC Commissioners to the alleged wrongful pursuit of investigative subpoenas issued to Tesla Lease Trust are as follows:

> 195. An overwhelming majority (but not all) of the Commissioners who adjudicated the motion to compel were Tesla's direct competitors.
>
> 196. Eight Commissioners [in their official capacities] presided over the hearing on the motion to compel: Defendants Westbrook, Lala, LeBlanc, Lane, Scoggin, Courville, Maurice Guidry, and Corley, all of whom voted against Tesla Lease Trust and voted to compel Tesla Lease Trust to respond to [LMVC's] unlawful subpoena.

---

[9]     Again, there is no ban on Tesla Lease Trust doing business in Louisiana, and Tesla, Inc. has been issued a manufacturer's license from the LMVC.

[10]    Interestingly, in the May 14, 2021 Affidavit of counsel for Tesla Lease Trust, he defines "Tesla" to be only "Tesla Lease Trust." *See* Exhibit "A-3," ¶ 2.

*Id.*, ¶¶ 195-96.  Thus, the Tesla Plaintiffs' entire case against the Dealership Defendants and the Private Defendants is based on the fact that some of them are competitors and members of LADA and some of them, in their official capacities, voted to compel Tesla Lease Trust to respond to a subpoena.  As shown above, there are no other allegations in the Complaint that any of the Dealership Defendants or Private Defendants were parties to any alleged "anti-competitive" campaign or conspiracy against the Tesla Plaintiffs.  *See* Exs. 1-7.

Even more damning is that the Tesla Plaintiffs also sued defendants who clearly had no involvement at all in the subpoenas.  The Tesla Plaintiffs admit that Mr. Scoggin and his alleged business, Airline Car Rental, are *not* LADA members and are *not* direct competitors of the Tesla Plaintiffs.  *Id.*, ¶¶ 40, 88-80; pp. 11, 15.  Moreover, the Tesla Plaintiffs admit that Mr. Hightower (Holmes Motors), Mr. Fontenot (T & J Ford), and Mr. Marcotte (Morgan Buick), did not *preside over the LMVC hearing, nor did they vote to compel Tesla Lease Trust to respond to the subpoenas*.

## LAW AND ARGUMENT

## I.    RULE 12(b)(6) STANDARD.

Rule 12(b)(6) authorizes the filing of a motion to dismiss a case for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, the district court is generally confined to the facts stated in the pleading.  Fed. R. Civ. P. 12(d).  However, the district court may properly consider documents that "are referred to in the plaintiff's complaint and are central to [his] claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  For the purposes of deciding a Rule 12(b)(6) motion, the allegations of a complaint must be accepted as true.  *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  Nonetheless, the complaint must contain "more than labels and conclusions" and its

"[f]actual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). Thus, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## II. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR ANTITRUST VIOLATIONS UNDER FEDERAL OR STATE LAW (COUNTS I AND V).

### A. Applicable Legal Standards.

Section 1 of the Sherman Act declares unlawful every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce .…" 15 U.S.C. § 1. To state an antitrust claim, the plaintiffs must allege that "the defendants (1) engaged in a conspiracy (2) that produced some anti-competitive effect (3) in the relevant market." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc*., 200 F.3d 307, 312 (5th Cir. 2000) (*quoting Johnson v. Hospital Corp. of America*, 95 F.3d 383 (5th Cir. 1996)). Plaintiff must also allege that "they have suffered an injury stemming from the complained-of anti-competitive behavior." *Id.* (*citing Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). " 'Antitrust injury' is an 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.' " *In re Pool Products Distribution Mkt. Antitrust Litig*., 158 F.Supp.3d 544, 550 (E.D. La. 2016) (*quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*., 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)).

Louisiana law is substantially similar. *See* La. Rev. Stat. § 51:122(A) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or

commerce in this state is illegal"). Louisiana courts apply the same standards and consider federal analysis of the Sherman Act to be persuasive, although not controlling. *HPC Biologicals, Inc. v. UnitedHealthcare of Louisiana, Inc*., 16-0585, p. 8 (La. App. 1 Cir. 5/26/16); 194 So. 3d 784, 793 (plaintiffs must allege "that defendants (1) engaged in a conspiracy; (2) that restrained trade or injured competition; (3) in a particular market" as well as an antitrust injury).

As explained by the Supreme Court, "[b]ecause § 1 of the Sherman Act does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Bell Atlantic*, 550 U.S. at 553 (internal quotations and citations omitted). Thus, to state a § 1 claim sufficient to withstand dismissal on a Rule 12(b)(6) motion "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made… and a bare assertion of conspiracy will not suffice." *Id.* at 556-58.

To satisfy the conspiracy element under federal or state law "a plaintiff must show 'that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *HPC Biologicals,* 194 So. 3d at 793 (*quoting Marucci Sports, L.L.C. v. National Collegiate Athletic Association*, 751 F.3d 368, 373– 74 (5th Cir. 2014)). The complaint must specify "that a defendant purposefully joined and participated in the conspiracy." *In re Processed Egg Products Antitrust Litig*., 821 F.Supp.2d 709, 720 (E.D. Pa. 2011) (internal citations omitted). There must be "more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy." *Id.* "Simply using the global term 'defendants'

to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient." *Id.*

In the context of trade associations, federal courts have consistently concluded that "mere membership in a trade association … is insufficient without more to give rise to an inference of conspiracy." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd*., 513 F.Supp. 1100, 1149 (E.D. Pa.1981), *aff'd in part, rev'd in part sub nom*. 723 F.2d 319 (3d Cir.1983) (collecting numerous cases). Federal courts have uniformly "reject[ed] the notion that mere membership in a trade association gives rise to an inference of conspiratorial conduct by a particular member, even when the association itself has been found to have engaged in illegal conduct." *Id.* Rather, "there must be proof of knowing, intentional, participation" by each defendant "in the illegal scheme." *Id.* (emphasis added). "The key element of proof for linking an Association member to the acts of his organization is a showing that he knew of and condoned the act in issue." *Kline v. Coldwell, Banker & Co*., 508 F.2d 226, 231–32 (9th Cir. 1974) (*quoting Vandervelde v. Put & Call Brokers & Dealers Association, Inc*., 344 F.Supp. 118, 155 (S.D.N.Y.1972)).

### B. Counts I and V Should Be Dismissed With Prejudice.

The Complaint does not contain sufficient factual matter to state a claim for an antitrust conspiracy under federal or state law against the Dealership Defendants or Private Defendants. Plaintiffs allege:

> 210. Specifically, the Dealers Association, its members, the Dealerships, and the named Commissioners knowingly formed, joined, and entered a conspiracy with a unity of purpose to restrain trade. The Commission's first steps toward threatening Tesla's participation in the market for leasing and warranty servicing of vehicles in Louisiana was its issuing of subpoenas to Tesla Lease Trust relating to Tesla's warranty work and leasing even though Tesla was a "fleet owner," an entity over which the Louisiana legislature has made clear that the Commission has no authority over.

211. Their agreement to do so is evidenced in part by their joint efforts to bar Tesla from direct sales in Louisiana, from their communications regarding Tesla's service and leasing operations in Louisiana, their concerted efforts to change the Commission's interpretation of state law, and their response to Tesla's planned service center in New Orleans.

Doc. 1, ¶¶ 210-11. These bald allegations, however, are not supported by any specific facts, only conclusory statements. There are no facts alleged anywhere in the Complaint to demonstrate the formation of any agreement to unlawfully restrain trade by the Dealership Defendants or the Private Defendants with any other party. There are no facts alleged to show "joint efforts" by the Dealership Defendants or the Private Defendants "to bar Tesla, Inc. from direct sales in Louisiana." In fact, the Tesla Plaintiffs concede that the LADA's alleged "lobbying efforts" regarding the direct sales ban is not part of their antitrust or unfair practices claims. *Id.*, p. 23, fn. 17.

At best, the Tesla Plaintiffs highlight isolated examples of communications between *non-party* dealerships and/or *non-party* representatives of LADA to executives of LMVC and the Attorney General regarding Tesla Lease Trust to which none of the Dealership Defendants or Private Defendants were parties. Rec. Doc. 1, ¶¶ 132, 140-41, 147, 149-56, 158-60, 162-63; Exs. 1-5. Further, the mere voting by some of the Private Defendants, in their official capacities as Commissioners, to compel Tesla Lease Trust to comply with an investigative subpoena does not state a claim for an antitrust violation or demonstrate an antitrust conspiracy. *Id.*, ¶¶ 192-94. The Tesla Plaintiffs' Complaint does not allege facts to demonstrate "concerted action" or "'a conscious commitment to a common scheme designed to achieve an unlawful objective." *HPC Biologicals,* 194 So. 3d at 793; *Marucci Sports, L.L.C.*, 751 F.3d at 373–74. Simply alleging that the Dealership Defendants and Private Defendants are members of LADA, does not state an antitrust claim against them, absent specific factual allegations that they knowingly participated in

and approved of the LADA's alleged unlawful conduct. *Zenith Radio Corp.*, 723 F.2d 319; *Kline*, 508 F.2d at 231–32. The Complaint contains no such allegations.

Moreover, the Tesla Plaintiffs admit that their alleged antitrust injury is speculative given that the state court action which Tesla Lease Trust brought "to challenge the Commission's subpoenas" "is still ongoing." Doc. 1, ¶¶ 197-200. In fact, the Tesla Plaintiffs admit that LMVC "stayed Tesla Lease Trust's supposed obligation to comply with the February 12, 2021, subpoena to allow Tesla Lease Trust to seek judicial review" in state court. *Id.*, ¶ 192. Importantly, nowhere in the Complaint do the Tesla Plaintiffs argue that Tesla Lease Trust has been denied a license to lease vehicles in Louisiana or barred from servicing its leased vehicles in Louisiana. And the Tesla Plaintiffs concede that Tesla Lease Trust has not been required to answer the investigative subpoena which remains under judicial review. Thus, the Tesla Plaintiffs clearly have not suffered an actionable antitrust injury "of the type the antitrust laws were intended to prevent" which "flows from" some unlawful conduct of the Dealership Defendants or the Private Defendants. *In re Pool Products*, 158 F.Supp.3d at 550; *Brunswick Corp.*, 429 U.S. at 489.

For all these reasons, the Tesla Plaintiffs fail to state a claim upon which relief can be granted for alleged antitrust violations under federal or state law. Fed. R. Civ. P. 12(b)(6). Counts I and V should be dismissed with prejudice under Rule 12(b)(6).

## III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR UNFAIR TRADE PRACTICES (COUNT VI).

### A. Applicable Legal Standards.

Under the Louisiana Unfair Trade Practices Act ("LUTPA") "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A). Under LUTPA, "[w]hat constitutes unfair and/or deceptive practices is not specifically defined, but is determined on a case by case

basis." *831 Bartholomew Investments-A, L.L.C. v. Margulis*, 08-0559 (La. App. 4 Cir. 9/2/09); 20 So. 3d 532, 538 (*quoting Jefferson v. Chevron U.S.A., Inc.*, 98-0254, 97-2436 (La. App. 4 Cir. 5/20/98); 713 So. 2d 785, 792-793). "A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Id.* at 539. (emphasis added). "A trade practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation." *Id.* Allegations of "unfair" or "deceptive" conduct which are "merely conclusory" are insufficient to state a claim. *Id.*; *see also Cargill, Inc. v. Degesch Am., Inc.*, 875 F.Supp.2d 667, 676 (E.D. La. 2012) (dismissing on 12(b)(6) motion plaintiffs' LUTPA claim, and stating "conclusory allegations of unethical or oppressive conduct not supported by the record are insufficient").

### B.  Count VI Fails to State a Claim Under LUTPA.

The Tesla Plaintiffs' LUTPA claim is based on the same alleged conduct as its antitrust claims. Rec. Doc. 1, ¶¶ 293-94, 299-300. The Complaint is devoid of any factual allegations to suggest that that Dealership Defendants or Private Defendants engaged in any unfair act or practice that is against public policy or could be considered unethical, oppressive, unscrupulous, substantially injurious, fraudulent or deceitful. At best, the Complaint alleges that some of the Private Defendants, acting in their official capacities, voted to compel Tesla Lease Trust to comply with LMVC's investigative subpoena. Doc. 1, ¶¶ 175, 189-91, 194, 196; Ex. 7. As to the Dealership Defendants, all that is alleged is that they are members of LADA[11] and that LADA allegedly pursued an "anti-Tesla" agenda in conspiracy to restrain trade. *Id.*, ¶¶ 44, 55, 67, 71, 75, 79, 83, 131-33, 136-37; Exs. 2-6. Again, none of the Dealership Defendants or Private Defendants are parties to the emails and letters that the Tesla Plaintiffs claim demonstrate LADA's

---

[11]     Except Mr. Scoggin and his dealership Airline Car Rent which are not alleged to be members of LADA. *Id.*, ¶¶ 88-89.

antitrust conspiracy.  *See* Exs. 1-7.  Accordingly, Count VI fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).

## IV.    TESLA PLAINTIFFS' STATE LAW CLAIMS ARE OTHERWISE PRESCRIBED ON THE FACE OF THE COMPLAINT (COUNT V AND VI).

### A.    Applicable Legal Standards.

"Where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling or the like, the Court may dismiss a claim under Rule 12(b)(6)."  *Chiasson v. Rogers-Premier Enterprises*, LLC, CV 19-2502, 2019 WL 4805886, at *2 (E.D. La. Oct. 1, 2019) (*citing Jones v. Alcoa, Inc*., 339 F.3d 359, 366 (5th Cir. 2003). "Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed."  *Id.* (*quoting Terrebonne Par. Sch. Bd. v. Mobil Oil Corp*., 310 F.3d 870, 878 (5th Cir. 2002)).  "But, once prescription is evident from the pleadings, the burden shifts to the plaintiff to demonstrate that prescription was either suspended or interrupted." *Id.*

Louisiana's antitrust statutes do not contain a specific prescriptive period for private actions for damages.  However, Louisiana courts hold that antitrust actions are subject to a one-year liberative prescription under Louisiana Civil Code art. 3492.  *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc*., 19-0730, p. 30 (La. App. 1 Cir. 7/2/19); 2019 WL 2865138, *15 *writ denied*, 19-01232 (La. 11/19/19); 282 So. 3d 1069, and *writ denied*, 19-01436 (La. 11/19/19); 282 So. 3d 1070, and *writ denied*, 19-01349 (La. 11/19/19); 282 So. 3d 1073 (collecting cases).  "This prescription commences to run from the day injury or damage is sustained."  La. Civ. Code art. 3492.

Claims under LUTPA are also subject to a one-year prescriptive period:

E. The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action.

La. Rev. Stat. § 51:1409(E).

**B.** **Counts V and VI Should Also Be Dismissed As Prescribed.**

Counts V and VI are also clearly barred by prescription under Louisiana law. The Tesla Plaintiffs filed the Complaint on August 26, 2022, but the conduct alleged to be unlawful restraints of trade or unfair trade practices occurred well before August 26, 2021. The LADA, Dealership Defendants, and/or Private Defendants alleged lobbying for amendment to the Direct Sales Ban allegedly occurred in 2017. Rec. Doc. 1, ¶¶ 131-33; 136-37. The emails and communications purportedly supporting the alleged unlawful "anti-Tesla" agenda were sent between 2018 and 2020. *Id.*, ¶¶ 150-165, 171; Exs. 1-6. The Tesla Plaintiffs admit they received these documents in April and May of 2021. *Id.*, ¶¶ 181-183. The state court Petition for Judicial Review, making similar factual allegations, was filed on August 26, 2021. *Id.*, ¶ 198. The May 14, 2021 Affidavit of Plaintiffs' counsel, Mark Beebe, makes clear that the Tesla Plaintiffs have been in possession of all of the emails, letters, and communications that they rely on in the present Complaint for more than a year. *See* Exhibit "A," and its Exhibit "3," attached hereto.

Further, the LMVC's investigative subpoenas were also issued more than a year ago in August 2020, September 2020; and February 2021. Doc. 1, ¶¶ 174-75; Ex. 7. The LMVC's Motion to Compel was brought in April of 2021, and the hearings regarding same were conducted in May and July, 2021. *Id.*, ¶¶ 180, 189-91, 194, 196.

Given that the Tesla Plaintiffs waited for more than a year after the events that allegedly constituted antitrust violations and unfair trade practices under Louisiana law to file suit, those claims are clearly prescribed on the face of the Complaint. *CamSoft Data Sys.,* 2019 WL 2865138 at *15; La. Civ. Code art. 3492; La. Rev. Stat. § 51:1409(E). Accordingly, Counts V and VI should be dismissed with prejudice for this reason as well.

# V.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR A DECLARATORY JUDGMENT (COUNT VII).

### A.    Applicable Legal Standards.

The Declaratory Judgement Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration.'" *Perry v. H.J. Heinz Co. Brands, LLC*, CV 19-280, 2019 WL 2423231, at *3 (E.D. La. June 10, 2019) (*quoting* 28 U.S.C. § 2201). But "[c]ourts uniformly dismiss declaratory judgment claims under Federal Rule of Civil Procedure 12(b)(6) if they are redundant of the substantive legal claims." *Id.* (collecting numerous cases). A plaintiff is not entitled to "declaratory relief" which merely "mirrors" his substantive claims. *Veal v. Wells Fargo Bank, N.A.*, 16-CV-3998, 2016 WL 6024534, at *6 (E.D. La. Oct. 14, 2016). The appropriate test is "whether resolving other claims would render a declaratory judgement superfluous." *Perry*, 2019 WL 2423231 at *4 (*citing Robinson v. Hunt County, Texas*, 921 F.3d 440, 450-51 (5th Cir. 2019)).

### B.    Count VII Should Be Dismissed With Prejudice.

Count VII asks the Court to "exercise its authority to declare that the Commission's composition does not comport with due process, the direct sales ban is unconstitutional, and that the Dealers Association, its members, the Dealerships, and the named Commissioners' conduct violates state and federal law." Doc. 1, ¶ 307. The relief requested is entirely redundant of the substantive legal claims attempted to be stated in Counts I through VI. *Id.*, ¶¶ 224, 247, 250, 260, 263, 273, 220, 291, 302. Because resolving these claims would render a declaratory judgment "superfluous," Count VII fails to state a claim for declaratory relief and should be dismissed. *Perry*, 2019 WL 2423231 at *4; *Veal* 2016 WL 6024534 at *6.

## CONCLUSION

For the foregoing reasons, the Rule 12(b)(6) Motion to Dismiss filed by the Dealership Defendants and Private Defendants should be granted. All claims attempted to be asserted against these defendants should be dismissed with prejudice.

Respectfully submitted,

*/s/Patrick S. McGoey*
Patrick S. McGoey, 24549
Andrea V. Timpa, 29455
SCHONEKAS EVANS McGOEY &
McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: 504-680-6050
Facsimile: 504-680-6051
patrick@semmlaw.com
andrea@semmlaw.com

*Attorneys for The Dealership Defendants and Private Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/Patrick S. McGoey*
PATRICK S. McGOEY