UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TESLA, INC., *ET AL*. | CIVIL ACTION NO. 22-cv-02982 |
| Plaintiffs | |
| | SECTION "R(1)" |
| VERSUS | |
| | JUDGE SARAH S. VANCE |
| LOUISIANA AUTOMOBILE | MAGISTRATE JUDGE |
| DEALER'S ASSOCIATION, *ET AL*. | DONNA PHILLIPS CURRAULT |
| Defendants | |

**KENNETH "MIKE" SMITH AND P.K. SMITH MOTORS, INC.'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Kenneth "Mike" Smith, in his individual capacity ("Mr. Smith"), and P.K. Smith Motors, Inc., ("P.K. Smith"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion to Dismiss the claims asserted against them by Plaintiffs Tesla, Inc., Tesla Lease Trust, and Tesla Finance, LLC (collectively, "Tesla") in their complaint (the "Complaint").[1]

## I.   __INTRODUCTION__

It is clear from the Complaint that Tesla does not like Louisiana law. Specifically, Tesla wants to sell its electric vehicles directly to Louisiana consumers rather than through a licensed and regulated third-party dealer, as required by Louisiana law. But the Complaint is not limited to challenging legislation that Tesla finds objectionable. Tesla also has sued in their "private" capacities Mr. Smith and other members of the Louisiana Motor Vehicle Commission ("LMVC") and businesses that operate motor vehicle dealerships in Louisiana. Without even attempting to meet basic pleading standards, Tesla brings antitrust and unfair trade practice claims against Mr. Smith and P.K. Smith. Those claims are deficient for multiple reasons and should not proceed one step further. Whatever leverage or advantage it hoped to gain by bringing those claims, Tesla's suing Mr. Smith in his individual capacity and his dealership, while neglecting to plead any specific facts against them, is plainly improper.[2]

---

[1] According to the Complaint, Plaintiff Tesla, Inc., designs, manufactures, and sells Tesla's electric vehicles, while Plaintiffs Tesla Lease Trust and Tesla Finance LLC lease and service Tesla's vehicles. *See* Complaint, ¶¶ 20–22. All three plaintiffs allege the same antitrust and LUTPA claims against the Smith Defendants. Accordingly, solely for the purpose of this Motion to Dismiss, the Plaintiffs are collectively referred to as "Tesla" since none of them have stated a claim upon which relief can be granted against Mr. Smith and P.K. Smith.

[2] The claims against Mr. Smith in his official capacity should likewise be dismissed for the reasons discussed in support of the motion to dismiss the official capacity claims.

The face of the Complaint indicates that Mr. Smith, in his individual capacity, and P.K. Smith have been sued for three reasons, none of which are sufficient to state a claim: (1) Mr. Smith is a Commissioner of the LMVC and a member of the Louisiana Automobile Dealers Association ("LADA"); (2) Mr. Smith is affiliated with P.K. Smith, a business serving Winnfield, Louisiana; and (3) P.K. Smith is a Buick-, Chevrolet-, and GMC-franchised dealership. Tesla's fifty-two-page Complaint does not include a single other factual allegation against Mr. Smith or P.K. Smith, and indeed only references Mr. Smith and P.K. Smith in *five* of the three hundred and seven paragraphs in the Complaint (and in none of the exhibits attached to the Complaint).

Under well-established Supreme Court precedent, Tesla must provide more than labels, conclusions, and a formulaic recitation of the elements of a cause of action, but instead must put forth enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). As explained in more detail below, Tesla has not come close. Accordingly, this Court should dismiss Tesla's Complaint with prejudice.

## II.    FACTUAL BACKGROUND[3]

### A.  The State of Louisiana created the Louisiana Motor Vehicle Commission to regulate the sale and distribution of motor vehicles within the State.

The State of Louisiana, through its Legislature, has determined that the "distribution and sale of motor vehicles and recreational products in the state of Louisiana vitally affects the general economy of the state, the public interest, and the public welfare." La. R.S. 32:1251 (first adopted in 1954). The State has further determined that "it is necessary to regulate and license" those persons selling and distributing motor vehicles within the State "in order to prevent frauds,

---

[3] Although the Court must accept Tesla's well-pleaded factual allegations as true for purposes of this Motion to Dismiss, Mr. Smith and P.K. Smith do not admit Tesla's factual allegations in the Complaint (including those referenced in this section) and reserve the right to challenge all of Tesla's allegations if the Court does not grant this Rule 12(b)(6) Motion.

impositions, and other abuses upon its citizens," specifically "undue control of the independent motor vehicle dealer and recreational products by their motor vehicle manufacturing and distributive organizations." *Id.*

In furtherance of these objectives, the Legislature created the Louisiana Motor Vehicle Commission (the "LMVC") to enforce Louisiana law and regulate motor vehicle sales and distribution. *See* La. R.S. 32:1253. The LMVC is composed of eighteen commissioners, fifteen of which are required by law to be an "actively engaged licensee of the commission…and be a holder of such a license at all times while a member of the commission." La. R.S. 32:1253(A)(2). The other three commissioners are public members who are not licensees of the LMVC. La. R.S. 32:1253(A)(3). The LMVC has been vested with:

> the powers and duties necessary and proper to enable it to fully and effectively carry out the provisions and objects of this Chapter, and is hereby authorized and empowered to make and enforce all reasonable rules and regulations and to adopt and prescribe all forms necessary to accomplish said purpose, and the enumeration of any power or authority herein shall not be construed to deny, impair, disparage, or limit any others necessary to the attainment thereof.

La. R.S. 32:1253(E). To help the LMVC carry out its statutory responsibilities, the LMVC employs an "Executive Director" as well as "such clerical and professional help" as necessary to properly discharge its duties. *See* La. R.S. 32:1253(D).

The LMVC's Executive Director has charge of "the office of the commission, the clerical help therein, the books and records of the commission, and the financial accounts of the commission." La. Admin. Code tit. 46 pt. V § 105. The Executive Director is also authorized to issue subpoenas "to bring before the commission any person in this state, to give testimony under oath, as well as for the purpose of compelling production of records and papers, relative to matters to be investigated, considered or heard by the commission." La. Admin. Code tit. 46, pt. V, § 111. This authority includes issuing a subpoena when "in the opinion of the Executive Director, such a

subpoena is necessary to investigate any potential violation or lack of compliance with R.S. 32:1251 et seq., or the rules, regulations, or orders of the commission." La. Admin. Code tit. 46, pt. V, § 303. The Executive Director also enforces investigatory subpoenas via a motion to compel brought before the LMVC.[4]

Louisiana law prohibits a motor vehicle manufacturer from selling vehicles directly to Louisiana consumers, and, instead, a manufacturer must sell its vehicles through a licensed and regulated third-party dealer. *See* La. R.S. 32:1261(A)(1)(k). Similarly, a motor vehicle manufacturer must provide warranty repair services through a licensed and regulated third-party dealer. *See* La. R.S. 32:1261(A)(1)(t)(i). However, as Tesla's Complaint acknowledges, the LMVC has interpreted Louisiana law as allowing a motor vehicle manufacturer to lease a vehicle directly to Louisiana consumers without using a third-party dealer and to provide warranty repair services on those leased vehicles as the "fleet owner."[5] *See* La. R.S. 32:1261(A)(1)(t)(i).

## B. By its own admission, Tesla is seeking to avoid oversight by the LMVC regarding its motor vehicle sales.

According to its own Complaint, Tesla does not sell or lease its vehicles through third-party dealers due to its "unique direct sales/lease-and-service model," and, instead, "markets, sells, and leases its vehicles directly to consumers over the Internet (at www.tesla.com) and through a worldwide network of stores owned and operated by Tesla."[6] Tesla acknowledges in its Complaint that its "unique" sales model conflicts with Louisiana law, so Tesla requires "Louisiana residents [to] go to a neighboring State like Tennessee or Mississippi to [purchase] a Tesla vehicle."[7] Tesla

---

[4] *See* Complaint, ¶ 192 (noting a stay of an LMVC order to allow Tesla to seek judicial review of "of the Commission's ruling granting the motion to compel filed by its Executive Director").

[5] *See* Exhibit 1 to the Complaint.

[6] Complaint, ¶ 123.

[7] *See id.* ¶¶ 136–139.

allegedly leases vehicles directly to Louisiana residents and claims that it may lawfully perform warranty repair services on any Tesla vehicle in the State, including those purchased out-of-state and brought back to Louisiana.[8]

Tesla further alleges that the LADA and some of its members have been lobbying for an interpretation of Louisiana law that would prohibit Tesla from leasing its vehicles directly to Louisiana consumers and performing warranty repair services on any Tesla vehicle.[9] Also according to Tesla's Complaint, the LMVC has rejected the LADA's lobbying efforts.[10]

In August 2020, the Executive Director of the LMVC issued Tesla a subpoena regarding its leasing and warranty repair activities at a Tesla facility in New Orleans, to which Tesla responded.[11] Apparently, the contents of Tesla's document production indicated that Tesla may have been unlawfully performing warranty repair services on vehicles purchased out-of-state.[12] The Executive Director thereafter issued another subpoena to Tesla in February 2021 (the "February 2021 Subpoena"), requesting documents related to Tesla's warranty repair work at its New Orleans facility.[13]

According to the Complaint, Tesla objected to the February 2021 Subpoena, arguing that the LMVC "has no authority" over Tesla and "no authority to request records relating to warranty

---

[8] *Id.* ¶¶ 142–143.

[9] *See id.* ¶¶ 129–173.

[10] *See* Exhibit 1 to the Complaint; *see also* Complaint, ¶¶ 165–170.

[11] *See* Complaint, ¶ 174.

[12] *See id.* ¶ 240.

[13] *See* Exhibit 7 to Complaint. Although Tesla alleges that a second subpoena was issued in September 2020, this subpoena was apparently withdrawn by mutual agreement of Tesla and the Executive Director. Complaint, ¶ 174.

repair work."[14] Tesla also admits that it submitted public records requests to the LMVC because of "the Commission's and the Commissioners' ties to the Dealers Association, the Dealerships, and the traditional automotive industry in Louisiana more generally…in an effort to further determine if the Commission and its Commissioners maintained any pre-dispositions or bias toward Tesla that could improperly influence its investigation."[15] The LMVC responded to Tesla's requests between April 26 and April 28, 2021.[16] According to Tesla's counsel, the LMVC's responses on those dates included numerous communications between members of the LADA and the LMVC about which Tesla now complains.[17] Tesla also defended against the Executive Director's motion to compel regarding the February 2021 Subpoena in hearings before the LMVC[18] and, after those efforts were unsuccessful, filed a Petition for Judicial Review in the Twenty-Fourth Judicial District Court for the State of Louisiana on August 26, 2021, which suit remains ongoing.[19]

### C. Tesla is now suing Mr. Smith, in his individual capacity, and P.K. Smith without any factual basis.

On August 26, 2022, Tesla filed this lawsuit against, *inter alia*, Mr. Smith, in his individual capacity, and P.K. Smith, alleging violations of the Sherman Antitrust Act, Louisiana antitrust law,

---

[14] Complaint, ¶ 178.

[15] *Id.* ¶ 181.

[16] *Id.* ¶ 182.

[17] *See* Exhibit A, Affidavit of Mark Beebe, ¶¶ 6, 11–17. This affidavit was attached as Exhibit 3 to Tesla's Petition for Judicial Review in the Twenty-Fourth Judicial District Court for the State of Louisiana, Case No. 820-801. Because the Court may take judicial notice of state court proceedings when adjudicating a Rule 12(b)(6) motion, consideration of this affidavit is proper. *See LaBranche v. Nestor I, LLC*, No. 18-8399, 2019 WL 2078715, *3 (E.D. La. May 10, 2019).

[18] *See* Complaint, ¶¶ 180–196.

[19] *See id.* ¶¶ 197–200.

and the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").[20] Tesla alleges that "the members and leadership of the [LADA]—including the individual named Dealerships—have conspired to prohibit Tesla from engaging in the remaining activities that state law allows: leasing Tesla vehicles and providing warranty repair and services for Tesla vehicles in Louisiana."[21] Although Tesla's factual allegations are legally insufficient because they are, at best, speculative and conclusory, the alleged unlawful activity about which Tesla complains can be summarized as follows:

1. Mr. Smith is a Commissioner on the LMVC, an active market participant and alleged "direct competitor" of Tesla by his affiliation with P.K. Smith, and a member of the LADA;[22]

2. LADA and some of its members have lobbied for an interpretation of Louisiana law that is unfavorable to Tesla;[23] and

3. The Executive Director of the LMVC issued the February 2021 Subpoena, which allegedly shows that the LMVC has adopted the LADA's interpretation of Louisiana law and against which Tesla has had to defend itself.[24]

Tesla's Complaint, however, does not contain a single factual allegation against Mr. Smith or P.K. Smith to support its claim that they violated federal and state antitrust laws and LUTPA. The only time Mr. Smith and P.K. Smith are explicitly referenced in the Complaint is in the "Parties and Standing" section,[25] and there are simply no factual allegations anywhere in the Complaint that Mr. Smith or P.K. Smith executed or entered into an agreement with anyone to

---

[20] *See id.* ¶¶ 203–222, 275–304. Tesla also alleges a claim against Mr. Smith and P.K. Smith under the Declaratory Judgment Act. *See id.* ¶¶ 305–07.

[21] *Id.* ¶ 11.

[22] *See id.* ¶¶ 12, 24–98.

[23] *See id.* ¶¶ 129–173.

[24] *See id.* ¶¶ 174–202. This allegation conveniently ignores Exhibit 1 to the Complaint, in which the chairman of the LMVC expressly disagreed with the LADA's interpretation of Louisiana law.

[25] *See id.* ¶¶ 39, 60–63.

unreasonably restrain trade. Even the alleged lobbying communications attached to Tesla's Complaint were not authored by Mr. Smith, and there is no allegation anywhere in the Complaint that Mr. Smith or anyone representing P.K. Smith was personally involved in those communications.[26] While Tesla also complains about the February 2021 Subpoena, this subpoena was not issued by Mr. Smith or anyone representing P.K. Smith.[27] Simply put, the Complaint reveals no factual or legal basis for the claims asserted against Mr. Smith and P.K. Smith.

## III.   **LAW AND ANALYSIS**

### A. **Legal Standard for Rule 12(b)(6) Motion.**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court generally limits its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp*., 748 F.3d 631, 635 (5th Cir. 2014). "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc*., 78 F.3d 1015, 1017-

---

[26] *See* Exhibits 1–6 to the Complaint; *see also* Complaint ¶¶ 148–164.

[27] *See* Exhibit 7 to the Complaint.

18 (5th Cir. 1996)). The Court may take judicial notice of related state court proceedings, *see LaBranche v. Nestor I, LLC*, No. 18-8399, 2019 WL 2078715, *3 (E.D. La. May 10, 2019), and state administrative proceedings. *See Metro Riverboat Assocs., Inc. v. Bally's Louisiana, Inc*., No. 00-0353, 2001 WL 327588, *1 (E.D. La. Mar. 3, 2001). The Court may also consider documents attached to a motion to dismiss or to an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Brand Coupon Network,* 748 F.3d at 635.

### B. Tesla has not alleged facts sufficient to state a claim for antitrust violations under the Sherman Antitrust Act.

Tesla first alleges that Mr. Smith and P.K. Smith violated the Sherman Antitrust Act, claiming that "the Dealers Association, its members, the Dealerships, and the named Commissioners knowingly formed, joined, and entered a conspiracy with a unity of purpose to restrain trade," which resulted in the Commission's "issuing of subpoenas to Tesla Lease Trust relating to Tesla's warranty work and leasing."[28] Tesla further alleges that the commissioners' "agreement to do so is evidenced in part by their joint efforts to bar Tesla from direct sales in Louisiana, from their communications regarding Tesla's service and leasing operations in Louisiana, their concerted efforts to change the Commission's interpretation of state law, and their response to Tesla's planned service center in New Orleans."[29] Finally, Tesla alleges that "the Commissioners in furtherance of the conspiracy and unified purpose have initiated a costly investigation of Tesla and have threatened Tesla's continued participation in the market through enforcement of their anticompetitive pernicious interpretation of state law."[30] As explained in more detail below, Tesla has failed to adequately allege an antitrust violation.

---

[28] Complaint, ¶ 210.

[29] *Id.* ¶ 211.

[30] *Id.* ¶ 212.

**1.  Tesla has not alleged sufficient facts to establish that the Mr. Smith and P.K. Smith engaged in a conspiracy to unreasonably restrain trade.**

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. Despite its language, Courts have long interpreted the Sherman Act to only proscribe unreasonable restraints on trade. *Golden Bridge Tech., Inc. v. Motorola, Inc*., 547 F.3d 266, 271 (5th Cir. 2008). To allege a violation of § 1 of the Sherman Act, a plaintiff must adequately plead that: (1) the defendant engaged in a conspiracy; (2) the conspiracy had the effect of restraining trade; and (3) trade was restrained in the relevant market. *Id.*

To satisfy the conspiracy element of a Sherman Act claim, the plaintiff must demonstrate that "that the defendants engaged in concerted action, defined as having a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* This burden requires alleging "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. The crucial question regarding a conspiracy is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Id.* at 553.

Federal courts in Louisiana, including the Fifth Circuit, have consistently dismissed a plaintiff's antitrust claim when he failed to allege specific facts demonstrating that the defendants engaged in a conspiracy. In *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, a baseball bat manufacturer brought an antitrust suit against two athletic associations, alleging that their regulations on non-wooden baseball bats excluded new market entrants. 751 F.3d 368, 372 (5th Cir. 2014). The plaintiff alleged that the defendants "engaged in a conspiracy" which "consist[ed] of an understanding and concert of action…with the purpose and effect of excluding new entrants and insulating [the Incumbent] Manufacturers from competition in a relevant market." *Id.* at 375.

The Fifth Circuit affirmed dismissal of the plaintiff's claim, finding that the complaint did not "allege any specific *facts* demonstrating an intention on the part of the [defendants] or any other party to engage in a conspiracy," and the complaint did not make it plausible that the defendants "adopted a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* (emphasis in original); *see also Broyles v. Wilson*, 3 F.3d 439 (5th Cir. 1993) (dismissing plaintiff's antitrust complaint because the plaintiff did not "present any facts that show an actual combination among the defendants that affected interstate commerce").

Importantly, this Court already has held that a regulatory board's inclusion of active market participants does not constitute a conspiracy in violation of the Sherman Act. In *Veritext Corp. v. Bonin*, a court-reporting service filed an antitrust suit against the Louisiana Court Reporter's Association ("LCRA") and the Louisiana Board of Examiners of Certified Shorthand Reporter's ("CSR Board"). 417 F. Supp. 3d 778, 782–83 (E.D. La. 2019). Of the nine seats on the CSR Board, six were comprised of active market participants who were also members of the LCRA, and the plaintiff alleged that these board members "conspired together to restrict trade by disallowing volume-based discounts to court reporting firms, in violation of the Sherman Antitrust Act." *Id*. at 783. Although the plaintiff's petition cited communications between the LCRA and the CSR Board regarding potential enforcement actions, the Court held that the plaintiff had not adequately alleged a conspiracy, stating that although "members of the CSR Board were simultaneously members of the LCRA, that alone does not result in a finding that both associations are engaged in an unlawful conspiracy." *Id.* at 786.

Here, like the plaintiff in *Veritext*, Tesla's allegation that Mr. Smith is simultaneously an LMVC commissioner, an active market participant, and a LADA member is insufficient on its own to establish a conspiracy. *Veritext*, 417 F. Supp. 3d at 786. Nor has Tesla has alleged "any

specific *facts* demonstrating an intention on the part of the [Mr. Smith or P.K. Smith] or any other party to engage in a conspiracy," *Marucci*, 751 F.3d at 375, as Tesla does not even claim that any of the allegedly unlawful communications attached to the Complaint were authored, approved, or even reviewed by Mr. Smith or anyone representing P.K. Smith.[31]

Further, the February 2021 Subpoena was not issued by Mr. Smith or P.K. Smith, but by the LMVC's Executive Director[32] pursuant to her authority to "investigate any potential violation or lack of compliance with R.S. 32:1251 *et seq.*, or the rules, regulations, or orders of the commission." La. Admin. Code tit. 46 pt. V § 303. There are no factual allegations to support that the February 2021 Subpoena was anything other than the lawful decision of the Executive Director to investigate Tesla's compliance with Louisiana law. *See Twombly*, 550 U.S. at 553–54. Tesla also includes allegations in its Complaint about the Executive Director's motion before the LMVC in May 2021 to compel compliance with the subpoena, but Tesla does not allege that Mr. Smith was involved in the May 2021 decision to grant that motion.[33] Tesla's bare and conclusory statements do not suffice to allege that Mr. Smith and P.K. Smith engaged in a conspiracy, and Tesla's Sherman Act claim against Mr. Smith and P.K. Smith must be dismissed. *See Reese v. Marketron Broad. Sols*., LLC, No. CV 17-9772, 2018 WL 279633, *2 (E.D. La. Jan. 3, 2018) (Vance, J.) (dismissing plaintiff's complaint because it "[directed] its allegations towards 'defendants' as a group without explaining any particular defendant's involvement").

---

[31] *See id.* ¶¶ 148–164; *see also* Exhibit 1–6 to the Complaint.

[32] *See* Exhibit 7 to the Complaint. Tesla's allegation that the "Commission" issued this subpoena is an incorrect legal conclusion that need not be accepted by the Court. *Iqbal*, 556 U.S. at 678.

[33] *See* Complaint, ¶ 196.

**2. Tesla has not stated sufficient facts to establish that any alleged conspiracy unreasonably restrained trade.**

The Sherman Act is "intended to protect *competition*, not necessarily *competitors*." *Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir. 1991) (emphasis in original). To state a Sherman Act claim, the plaintiff must adequately allege not only that the defendants' conspiracy injured him, but also that it produced some anti-competitive effect in the relevant market. *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994). Unless the alleged conduct is *per se* illegal, i.e., "would always or almost always tend to restrict competition and decrease output," the Court applies the rule of reason to determine if the alleged conduct unreasonably restrained trade. *Golden Bridge Tech.*, 547 F.3d at 271.

The Fifth Circuit has consistently dismissed a plaintiff's antitrust claim when the only alleged injury is to the plaintiff rather than the relevant market. In *Green v. State Bar of Texas*, an insurance adjuster brought an antitrust claim against the State Bar of Texas and others after the Bar obtained an injunction against the adjuster for engaging in the unauthorized practice of law. 27 F.3d 1083, 1085 (5th Cir. 1994). The plaintiff alleged that the defendants conspired to force him to cease doing business and "cause [his] clients to breach their contracts with [him] so that they might enter into contracts for representation with [a defendant] and other members of the State Bar of Texas." *Id.* at 1087. The Fifth Circuit held that the plaintiff failed to state an antitrust claim because he alleged an injury only to himself and demonstrated "no unreasonable restraint of competition in a relevant market." *Id.*; *see also Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir. 1991) (holding that a physician failed to prove a market injury when he "offered no evidence at all that his departure from the practice of nuclear medicine caused any difficulty for either patients or other doctors in the San Antonio area").

13

In *Marucci Sports*, the plaintiff alleged that the defendants' standards regarding non-wooden baseball bats harmed the plaintiff and other unnamed market entrants by favoring large manufacturing companies. *See* 751 F.3d at 376. The Fifth Circuit held that these allegations were insufficient to allege harm to "competition among non-wood baseball bat manufacturers," as the plaintiff's "assertions regarding market injury are completely speculative… [and] [s]peculation about anticompetitive effects is not enough." *Id*.

Here, like the plaintiffs' allegations in *Green* and *Kiepfer*, Tesla's allegations that the February 2021 Subpoena has forced Tesla to endure a "costly investigation" and threatened Tesla's "continued participation in the market"[34] do not allege an unreasonable restraint on trade in the market that Tesla proposes.[35] *Green*, 27 F.3d at 1087; *Kiepfer*, 944 F.2d at 1221. Even if Tesla were excluded from its alleged market, Tesla's failure to comply with Louisiana law does not constitute a market injury. *See Green*, 27 F.3d at 1087; *see also Marucci*, 751 F.3d at 377 ("A restraint should not be deemed unlawful, even if it eliminates a competitor from the market, so long as sufficient competitors remain to ensure that competitive prices, quality, and service persist."); *Anago, Inc. v. Tecnol Med. Prod., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992) (noting that an antitrust injury includes "increased prices and decreased output" but excludes "the threat of decreased competition"). Further, responding to a state board's investigatory subpoena is not "injury of the type the antitrust laws were intended to prevent," *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997), and thus is not an antitrust injury. Like the plaintiff in *Marucci Sports*, Tesla's allegations that the market will be harmed because

---

[34] *See id.* ¶¶ 212.

[35] *See id.* ¶ 206–08. To be clear, Mr. Smith and P.K. Smith do not admit that Tesla has properly identified the relevant product and geographic market in this case and reserve all rights regarding Tesla's market definitions.

consumers will have reduced choice, services, and innovation as well as increased costs[36] are "completely speculative" and have no factual support anywhere in the Complaint. 751 F.3d at 375–76. Because Tesla has failed to adequately allege an unreasonable restraint on trade, Tesla's Sherman Act claim must be dismissed.

### 3. Alleged lobbying activities are immune from antitrust liability under the *Noerr-Pennington* Doctrine.

Tesla's Complaint takes issue with lobbying activities.[37] Even if Tesla has alleged sufficient facts to establish that Mr. Smith and P.K. Smith lobbied against Tesla (it has not), Tesla's claims against Mr. Smith and P.K. Smith still must be dismissed because any alleged anticompetitive lobbying activity is protected under *Noerr-Pennington* immunity. The *Noerr-Pennington* doctrine provides that "parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). Accordingly, campaigns to convince state legislators to pass anticompetitive laws and petitions made to the executive or judicial branches of government, including in administrative and legal proceedings, are exempt from antitrust liability even though the petitioning party ultimately seeks to destroy his competitors through such actions. *Id.*

There is no conspiracy exception to *Noerr-Pennington* immunity, which applies even when government officials conspire with a private party to employ government action as a means of stifling competition. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 382–83 (1991). The only exception to *Noerr-Pennington* immunity is when the lobbying activity is a

---

[36] *See id.* ¶ 215–216.

[37] *Id.* ¶ 28. To the extent Tesla's antitrust claims include lobbying activities related to the enactment of what Tesla calls the 2017 "direct sales ban," its Sherman Act claims are prescribed under the four-year statute of limitations. *See* 15 U.S.C. § 15(b).

"sham," which occurs when: (1) the lobbying is objectively baseless in the sense that no reasonable person could realistically expect success on the merits; and (2) the baseless lobbying conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993); *see also Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 862 (5th Cir. 2000) ("Lobbying activity is objectively baseless if a reasonable private citizen could not expect to secure favorable government action.").

Louisiana federal courts, including the Fifth Circuit, have consistently applied *Noerr-Pennington* immunity to a defendant who lobbied a governmental entity to take adverse action against a competitor. In *Bayou Fleet v. Alexander*, the plaintiff brought an antitrust suit alleging that the defendants "conspired to eliminate it from the sand pit business through challenges to its zoning status and through attempts to persuade authorities against issuing permits." 234 F.3d at 854. The Fifth Circuit held that the *Noerr-Pennington* Doctrine applied to the defendants' lobbying activities and that the sham exception did not apply because the defendants' efforts "achieved favorable results, [and thus] their endeavors were, by definition, reasonable." *Id.* at 862; *see also Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp*, 192 F. Supp. 2d 519, 536–37 (M.D. La. 2001) (holding the defendant licensee's lobbying before the Louisiana State Racing Commission was protected under *Noerr-Pennington*).

*Noerr-Pennington* immunity applies even when the defendants are simultaneously members of a regulatory board and active market participants. In *Ehlinger & Assocs. V. Louisiana Architects Ass'n*, the plaintiff alleged antitrust violations against the Louisiana Architects Association ("LAA") for obtaining "dominance over the [Louisiana Architect Selection Board] by

supporting its members in LASB elections and soliciting the LASB to adopt its positions on various issues." 167 F.3d 537 (5th Cir. 1998). The Fifth Circuit affirmed the district court's holding that the LAA was "protected from antitrust attack by the *Noerr-Pennington* doctrine," as the plaintiff's allegations were "nothing more than allegations that the LAA sought to influence the LASB and succeeded." *Id.* Similarly, in *Veritext*, this Court found that the LCRA's lobbying of the CSR Board was protected under the *Noerr-Pennington* doctrine, even though the LCRA comprised six of the nine members of the CSR Board and the lobbying allegedly led the CSR Board "to issue subpoenas, show cause orders, and engage in widespread coercion directed at insurance companies, private attorneys, and national court reporting firms over which it had no jurisdiction." 417 F. Supp. at 788.

Here, like the defendants in *Bayou Fleet*, *Ehlinger*, and *Veritext*, any alleged lobbying efforts by Mr. Smith or P.K. Smith to have Louisiana law interpreted unfavorably to Tesla are immune from antitrust liability under the *Noerr-Pennington* doctrine. *Bayou Fleet*, 234 F.3d at 862; *Ehlinger,* 167 F.3d at 537; *Veritext*, 417 F. Supp. at 788. Because there is no conspiracy exception to *Noerr-Pennington* immunity, it applies to Mr. Smith even though he is simultaneously a Commissioner on the LMVC, an active market participant, and an LADA member.[38] *See Ehlinger,* 167 F.3d at 537; *Veritext*, 417 F. Supp. at 788. Further, the sham exception to *Noerr-Pennington* immunity does not apply since any alleged lobbying efforts were obviously reasonable, as Tesla alleges that at least one state representative and the Louisiana Attorney

---

[38] This Court has also held that members of a governing board are entitled to state action/*Parker* immunity for carrying out their duties as board members. *See Ehlinger & Assocs. v. Louisiana Architects Ass'n*, 989 F. Supp. 775, 784 (E.D. La.) (Vance, J.) (holding "plaintiffs cannot end-run [*Parker*] immunity by suing the architects' association whose members have been awarded state work by the Board or who carry out the Board's policies by serving as LASB members").

General adopted the interpretation of Louisiana law about which Tesla now complains.[39] *See Ehlinger,* 167 F.3d at 537. And to the extent Tesla's Complaint alleges that the LMVC has now adopted an interpretation of Louisiana law unfavorable to Tesla due to such lobbying, that allegation on its own demonstrates that the lobbying efforts were not a sham. *See Bayou Fleet*, 234 F.3d at 862. Because Tesla's allegations against Mr. Smith and P.K. Smith are protected under *Noerr-Pennington* immunity, Tesla's Sherman Act claims must be dismissed.

### C. Tesla has not alleged sufficient facts to state a claim under Louisiana antitrust law and, further, any claim is prescribed.

In addition to its Sherman Act claim, Tesla has also alleged a violation of Louisiana antitrust law, La. R.S. 51:121–52.[40] Tesla's allegations under Louisiana law mirror its allegations under federal law.[41] As explained in more detail below, Tesla's claim must be dismissed because it has failed to state a claim under Louisiana antitrust law and any alleged claim is prescribed.

### 1. Tesla's Louisiana antitrust claim fails for the same reasons its Sherman Act claim fails.

Because La. R.S. 51:122 is virtually identical to § 1 of the Sherman Antitrust Act, "the United States Supreme Court's interpretation of the Sherman Act should be a persuasive influence on the interpretation of [Louisiana's] own state enactment." *Louisiana Power & Light Co. v. United Gas Pipe Line Co*., 493 So. 2d 1149, 1158 (La. 1986). Louisiana appellate courts have likewise considered federal antitrust jurisprudence when interpreting counterpart state statutes. *See Free v. Abbott Laboratories, Inc*., 176 F.3d 298, 299 (5th Cir. 1999) (listing cases). Louisiana courts only deviate from federal standards if "compelling justifications" exist for doing so. *Id.*

---

[39] *See* Exhibit 6 to the Complaint; *see also* Complaint ¶¶ 162–164 & 171.

[40] *See* Complaint, ¶¶ 275–92.

[41] *See id.* ¶¶ 283–85.

Here, as explained in more detail above,[42] Tesla has failed to adequately allege that: (1) Mr. Smith and P.K. Smith engaged in a conspiracy to restrain trade; and (2) that any alleged conspiracy unreasonably restrained trade. *See, e.g.*, *Marucci Sports,* 751 F.3d at 372; *Veritext Corp.*, 417 F. Supp. 3d at 786; *Green*, 27 F.3d at 1087. Even if Tesla had adequately stated an antitrust claim, Mr. Smith and P.K. Smith's alleged lobbying is immune from antitrust liability under the *Noerr-Pennington* doctrine. *See Ehlinger & Assocs. v. Louisiana Architects Ass'n*, 989 F. Supp. 775, 785–86 (E.D. La.) (Vance, J.) (applying *Noerr-Pennington* to a Louisiana antitrust claim). In this case, there are no "compelling justifications" to deviate from federal standards, and Tesla's Louisiana antitrust claim should be dismissed for the same reasons as its federal claim. *See Big River Indus., Inc. v. Headwaters Res., Inc.*, 971 F. Supp. 2d 609, 623 (M.D. La. 2013) (holding that the plaintiff's state law antitrust claims fail "for the same reasons" as its federal antitrust claims).

**2.   Tesla's claim under Louisiana antitrust law is prescribed.**

The Louisiana Supreme Court has held that the one-year prescriptive period for torts applies to an antitrust claim under Louisiana law, and federal courts have followed that holding. *See Drumm v. Sizeler Realty Co.*, 817 F.2d 1195, 1195 (5th Cir. 1987) (citing *Loew's, Inc. v. Don George, Inc.*, 110 So. 2d 553, 558 (La. 1959)). An antitrust cause of action accrues when a defendant commits an act that injures a plaintiff's business. *R & R Motorsports, LLC v. Textron Specialized Vehicles, Inc*., No. 21-2014, 2022 WL 1984145, at *2 (E.D. La. June 6, 2022) (citing *State ex rel. Ieyoub v. Bordens, Inc*., 95-2655 (La. App. 4 Cir. 11/27/96); 684 So. 2d 1024, 1026–28). Although the party pleading prescription ordinarily bears the burden of proving that the claim has prescribed, once prescription is evident from the pleadings, the burden shifts to the plaintiff to

---

[42] Section III.B, *supra*.

demonstrate that prescription has not run. *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 878 (5th Cir. 2002).

Here, Tesla's state law claim against Mr. Smith and P.K. Smith is prescribed on the face of the Complaint. *First*, all of the lobbying efforts about which Tesla complains occurred far more than a year before Tesla filed suit on August 26, 2022, as Exhibits 1–6 to Tesla's Complaint all were created on or before July 30, 2020. Further, Tesla **knew** about these communications far more than a year before filing suit. On May 14, 2021, Tesla's attorney testified via affidavit that he received the email and written correspondence that forms the basis of Tesla's conspiracy allegations between April 26 and April 28, 2021, in response to Tesla's public records requests.[43] Tesla's counsel further testified that:

> [S]everal records produced raise serious questions and concerns regarding both the Commission's adjudicative and prosecutorial independence, including potential bias and prejudgment of the merits, abrogating the guarantees of due process rights under both the Louisiana and United States Constitutions, **as well as possible violations of the Sherman Antitrust Act**, 15 U.S.C. §1, *et seq.*, by the Commission and its constituent Commissioners.[44]

Under Louisiana law, Tesla's counsel's knowledge about these documents more than a year before Tesla filed suit is imputed to Tesla. *Gibson v. Herman, Herman, Katz & Cotlar, L.L.P.*, 2004-2204 (La. App. 4 Cir. 2/15/06); 927 So. 2d 1178, 1184.

---

[43] *See* Exhibit A, ¶ 6; *see also id.* ¶¶ 12–17 (identifying the documents attached as Exhibits 1–6 to Tesla's Complaint as documents received from the LMVC).

[44] Exh. A, ¶ 11 (emphasis added).

*Second*, the February 2021 Subpoena about which Tesla complains was issued on February 12, 2021.[45] Tesla alleges that it responded to the subpoena on March 1, 2021.[46] Tesla also alleges that it defended against a motion to compel regarding the subpoena before the LMVC by filing an opposition on May 14, 2021, and attended the hearing on the motion on May 17, 2021, at which Tesla lost.[47] Tesla also alleges the LMVC denied its motion for reconsideration on July 12, 2021. By Tesla's own allegations, the February 2021 Subpoena was issued and Tesla began incurring alleged damages to defend against it far more than a year before this suit was filed on August 26, 2022. Tesla's claim under Louisiana antitrust law is prescribed and must be dismissed.

### D. Tesla has not alleged sufficient facts to state a LUTPA claim and, further, any claim is prescribed.

Tesla has also brought a claim under the Louisiana Unfair Trade Practices and Consumer Protection Law.[48] Specifically, Tesla complains that the defendants engaged in "concerted action to co-opt the Commission to bar Tesla from Louisiana" which, Tesla alleges, "is contrary to public policy because it violates the Louisiana Legislature's statutory decision to permit leasing and warranty servicing."[49] Tesla also complains that the defendants' concerted action was "unethical, oppressive, unscrupulous, [and] substantially injurious."[50] As explained in more detail below, Tesla's LUTPA claim fails as a matter of law and must be dismissed.

---

[45] Complaint, ¶ 175; *see also* Exhibit 7 to Complaint. It should be noted that Exhibit 7 indicates the subpoena was issued on February 3, 2021, while Tesla's Complaint alleges the subpoena was issued on February 12, 2021. For the purpose of this Motion to Dismiss, Mr. Smith and P.K. Smith use the later date.

[46] *Id.* ¶ 178.

[47] *Id.* ¶¶ 188–189.

[48] *See* Complaint, ¶¶ 293–304.

[49] *Id.* ¶ 299.

[50] *Id.* ¶ 300.

1. **Tesla's allegations against Mr. Smith and P.K. Smith do not implicate LUTPA, and the claim is barred by *Noerr-Pennington* immunity.**

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405. The range of prohibited practices under LUTPA is "extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." *Quality Env't Processes v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025. To meet this burden, the plaintiff must demonstrate that the defendant's actions offended established public policy and were immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994). Even then, "conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." *Quality Env't Processes*, 144 So. 3d at 1025. Simply put, LUTPA does not prohibit a business from taking actions to pursue profit, even at the expense of competitors, as long as the methods used are not egregious. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

Louisiana federal and state courts, including the Fifth Circuit, have rejected LUTPA claims analogous to Tesla's. In *Bolanos v. Madary*, the plaintiff brought a LUTPA claim against the defendant after the defendant wrote to various government agencies questioning the plaintiff's use of government funds, which allegedly delayed the plaintiff's subsequent government contracts. 609 So. 2d 972, 974–75 (La. App. 4 Cir. 1992). However, the court found that correspondence with government agencies and officials challenging a competitor's actions "does not fall to that level" of a LUTPA violation. *Id.* at 977. And in *K&F Rest. Holdings, Ltd. V. Rouse*, a restaurant chain brought a LUTPA claim against a grocery store chain, alleging that the grocer executed restrictive covenants with shopping-center developers that prohibited the developers from leasing to the plaintiff's restaurant, but not its competitors. 798 F. App'x 808, 809–10 (5th Cir. 2020). The

Fifth Circuit rejected the plaintiff's claim, noting that the restrictive covenants could not be against Louisiana public policy since "restrictive covenants limiting use of property by one party's competitors are lawful and not uncommon in Louisiana," and that the plaintiff hadn't demonstrated that "singling out a certain business—absent an impermissible classification, such as race—is unlawful or against 'established' Louisiana public policy." *Id.* at 811.

Here, Mr. Smith's simultaneously being a Commissioner on the LMVC and an active market participant does not rise to a LUTPA violation because the LMVC's makeup is required by Louisiana law and certainly not contrary to Louisiana public policy. *See* La. R.S. 32:1253(A); *K&F Rest. Holdings*, 798 F. App'x at 811 (holding that actions that are "lawful and not uncommon" do not violate public policy). Similarly, any alleged lobbying by Mr. Smith and P.K. Smith does not rise to a LUTPA violation, *Bolanos*, 609 So. 2d at 977, and, in any event, is protected by *Noerr-Pennington* immunity. *See Bayou Fleet*, 234 F.3d at 862 (applying *Noerr-Pennington* to plaintiff's LUTPA claim); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) ("There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust."). Further, singling out Tesla is not unlawful or against established Louisiana public policy. *K&F Rest. Holdings,* 798 F. App'x at 811. Finally, Tesla's allegations regarding the February 2021 Subpoena also fail to implicate LUTPA because even if Mr. Smith issued this subpoena (he did not),[51] LUTPA does not apply to members of a governing body for taking actions authorized by law. *Grigsby & Assocs., Inc. v. City of Shreveport*, 294 F. Supp. 3d 529, 545 (W.D. La. 2018) (granting defendants' Rule 12(b)(6) motion because "courts across Louisiana have not found LUTPA to be applicable to a municipality or members of a

---

[51] *See* Exhibit 7 to the Complaint.

governing body under circumstances like those alleged by [plaintiff] and this Court declines to be the first Court to recognize such."). Because Tesla has failed to adequately allege a LUTPA violation against Mr. Smith and P.K. Smith, its claim must be dismissed.

### 2.  Tesla's LUTPA claim is prescribed under La. R.S. 51:1409.

LUTPA claims are subject to "a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." La. R.S. 51:1409(E). As explained in more detail above concerning Tesla's Louisiana antitrust claim,[52] the "transactions or act which gave rise" to Tesla's LUTPA claim occurred far more than one year before Tesla filed this suit. Even if Tesla has adequately stated a LUTPA claim (it has not), its LUTPA claim is prescribed and must be dismissed.

### E.  Tesla has failed state a claim entitling it to declaratory relief.

Tesla has also asserted a claim under the Declaratory Judgment Act,[53] which provides that, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Declaratory Judgment Act "is merely a procedural device and does not create any substantive rights or causes of action." *Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 792 (5th Cir. 2018). Accordingly, when a plaintiff's substantive claims have been dismissed, a claim under the Declaratory Judgment Act also must be dismissed. *See id.* ("Because [plaintiff's] wrongful foreclosure and quiet title claims fail, he is not entitled to declaratory relief"); *accord Harris County, Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015); *Val-Com*

---

[52] Section III.C.2, *supra*.

[53] *See* Complaint, ¶¶ 305–07.

*Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 401 (5th Cir. 2011). Because Tesla has failed to state a claim under the Sherman Act, Louisiana antitrust law, or LUTPA, Tesla's claim under the Declaratory Judgment Act also must be dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Kenneth "Mike" Smith, in his individual capacity, and P.K. Smith Motors, Inc., respectfully ask the Court to dismiss Tesla's claims against them with prejudice.

Respectfully submitted,

/s/ *Patrick M. Bollman*
W. Raley Alford, III, 27354
Patrick M. Bollman, 38674
**STANLEY, REUTER, ROSS,**
   **THORNTON & ALFORD, LLC**
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:      (504) 523-1580
Facsimile:      (504) 524-0069
wra@stanleyreuter.com
pmb@stanleyreuter.com

*Counsel for Kenneth "Mike" Smith, in his individual capacity, and P.K. Smith Motors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Patrick M. Bollman*