IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

TESLA, INC., ET AL                  CIVIL ACTION NO. 2:22-CV-02982
       PLAINTIFFS

V.                                   JUDGE SARAH S. VANCE

LOUISIANA AUTOMOBILE
DEALERS ASSOCIATION, ET AL       MAG. DONNA PHILLIPS CURRAULT
       DEFENDANTS

**MEMORANDUM IN SUPPORT OF RENEWED RULE 12(b)(6)
MOTION TO DISMISS OF SEVEN DEALERSHIP DEFENDANTS
<u>AND SEVEN LMVC COMMISSIONERS IN THEIR PRIVATE CAPACITIES</u>**

       Defendants, T & J Ford, Inc. ("T & J"), Golden Motors, LLC ("Golden Motors"),

LeBlanc Automobiles, L.C. ("LeBlanc Automobiles"), Holmes Motors, LLC ("Holmes Motors"),

Morgan Buick GMC Shreveport, Inc. ("Morgan Buick"), Airline Car Rental, Inc. ("Airline"),

Shetler-Corley Motors, Limited ("Shetler-Corley Motors") **(collectively "Dealership**

**Defendants")**, V. Price Leblanc, Jr., Keith P. Hightower, Keith M. Marcotte, Wesley Randal

Scoggin, Donna S. Corley, Terryl J. Fontenot, and Maurice C. Guidry, in their private capacities

**(collectively the "Private Defendants")**, respectfully submit Memorandum in Support of their

Renewed Rule 12(b)(6) Motion to Dismiss.

       As with the original Complaint, the First Amended Complaint filed by plaintiffs,

Tesla, Inc., Tesla Lease Trust, and Tesla Finance, LLC (collectively the "Tesla Plaintiffs"), fails

to state any claim against the Dealership Defendants or Private Defendants upon which relief can

be granted.  The arguments raised herein are virtually identical to those asserted in the Dealership

Defendants' and Private Defendants' initial Rule 12(b)(6) Motion.  Doc. 103 and attachments.

Additionally, there should be no further delay.[1]  The Tesla Plaintiffs agreed to a submission date of January 25, 2023 of the defendants' initial 12(b)(6) Motions, which were filed on November 10, 2022.  Although several defendants, including the Dealership Defendants and Private Defendants, opposed any further continuance, the Tesla Plaintiffs had the submission date extended until February 8, 2023.  Doc. 146.  In that order, the Court stated that "The submission deadline will not be further continued absent a showing of good cause."  Doc. 146.

The Tesla Plaintiffs cannot state claims against the Dealership Defendants and Private Defendants who are entitled to be dismissed from this litigation.

## INTRODUCTION

The Dealership Defendants and Private Defendants filed their initial Rule 12(b)(6) Motion on November 10, 2022.  Doc. 103.  After obtaining a continuance of the submission date on defendants' 12(b)(6) Motions until February 8, 2023, the Tesla Plaintiffs were granted leave to amend their Complaint by Order of Magistrate Judge Donna Currault entered on January 11, 2023. Doc. 150.  Judge Currault did not reach the issue of whether the First Amended Complaint cures the deficiencies raised by defendants in their 12(b)(6) motions; rather she merely found that "this Court does not have 'substantial reason' to deny Plaintiffs' proposed amendment."  *Id.*

The Tesla Plaintiffs' First Amended Complaint contains only inconsequential revisions which do not cure the numerous deficiencies shown in the Dealership Defendants' and Private Defendants' prior Rule 12(b)(6) Motion to Dismiss.  *See* Doc. 103, and attachments.  The proposed First Amended Complaint does not add any new substantive factual allegations regarding

---

[1]     After leave to file the First Amended Complaint was granted, counsel for the Tesla Plaintiffs again reached out to defendants' counsel asking that any refiled 12(b)(6) motions be filed by January 25, 2023, but not be set for submission until **March 8, 2023**, a full month after the *continued* February 8th submission date, on motions that were initially filed in November, 2022.

the Dealership Defendants or Private Defendants.  *See* Docs.  151, 127-3.[2]  Rather, the Tesla Plaintiffs merely shift a few words around, add a handful of conclusory and unsupported statements, and now refer to the LADA, Dealership Defendants and Private Defendants collectively as a "Dealer Cartel."  These revised allegations still fail to state any claim upon which relief can be granted against the Dealership Defendants or Private Defendants for antitrust violations under federal or state law, for unfair trade practices, or for a declaratory judgment (Counts I, V, VI, and VII).

## THE TESLA PLAINTIFFS' REVISED ALLEGATIONS

As in the initial Complaint, the First Amended Complaint asserts due process, equal protection, and commerce clause challenges under the U. S. Constitution to Louisiana's Direct Sales Ban and Warranty Repair Ban.  Doc. 151 (Counts II, III, and IV).  But the Dealership Defendants and Private Defendants are not parties to the Tesla Plaintiffs' constitutional claims. *Id.*  Rather, in an attempt to exert additional pressure on the defendants to the constitutional claims, the Tesla Plaintiffs[3] joined the Dealership Defendants and Private Defendants in this litigation and asserted baseless claims for antitrust violations under federal and state law, state law unfair trade practices, and a duplicative and redundant claim for a declaratory judgment.  *Id.* (Counts I, V, VI

---

[2]     The First Amended Complaint was filed of record at Doc. 151.  In support of its motion for leave to file the First Amended Complaint, the Tesla Plaintiffs filed a redline comparison showing the allegations which had been changed and/or added in the First Amended Complaint at Doc. 127-3.  Review of this redline version demonstrates clearly that as to the Dealership Defendants and the Private Defendants, the changes have been purely superficial and non-substantive.

[3]     As shown in the Dealership Defendants' and Private Defendants' initial Rule 12(b)(6) Motion, the Tesla Plaintiffs are three separate entities yet refer to themselves collectively as "Tesla" throughout their pleading. This problem has not been corrected in the First Amended Complaint.  Doc. 151, p. 1, ¶¶ 2-13; 16-21; 23; 34-25; 43; 47-48; 53-54; 69; 94; 120-135; 137-138; 144-148; 152-156; 158; 161-162; 170-174; 176-181; 186; 189; 193; 198-199; 202-208; 210-214; 217-218; 220; 227; 232-233; 236; 239-253; 257; 262-268; 270; 274;-275; 278-280; 282-287; 289; 292-297; 299; 304; 306; 309-316; 323-324; 326; 328-332; 337-351; 355; 360-366; 373; 375-383.  **Tesla Finance, LLC is not a manufacturer, lessor or LMVC licensee, and is not a competitor of the Dealership Defendants or Private Defendants**. *Id.*, ¶¶ 27-28.  There are no facts stated in the First Amended Complaint which would support any claim by Tesla Finance, LLC against the Dealership Defendants or Private Defendants.

and VII).  Neither the factual allegations of the initial Complaint, nor the First Amended Complaint, support any of the claims alleged against the Dealership Defendants and Private Defendants.  In fact, despite the First Amended Complaint now consisting of over 70 pages and more than 386 paragraphs, there are only a handful of direct factual assertions concerning the Dealership Defendants and Private Defendants.

### A.     The Dealership Defendants, Private Defendants and the Purported "Dealer Cartel."

The allegations in the original Complaint and First Amended Complaint as to the relationship between the Dealership Defendants and Private Defendants have not changed.  As to each of the Private Defendants, the Tesla Plaintiffs allege only that they are each Commissioners of the Louisiana Motor Vehicle Commission ("LMVC") and each a "licensee at" one of the Dealership Defendants.  Doc. 151, ¶¶ 62, 63 (regarding Mr. Leblanc and Leblanc Automobiles); ¶¶ 74, 75 (regarding Mr. Hightower and Homes Motors); ¶¶ 78, 79 (regarding Ms. Corley and Shetler-Corley Motors); ¶¶ 83, 84 (regarding Mr. Fontenot and T & J Ford); ¶¶ 86, 87 (regarding Mr. Guidry and Golden Motors); and ¶¶ 90, 91 (regarding Mr. Marcotte and Morgan Buick).

As before, the Tesla Plaintiffs again allege that each of these six Private Defendant and/or six Dealership Defendants are members of the trade association, the Louisiana Automobile Dealers Association ("LADA").  *Id.*, ¶¶ 65, 77, 81, 85, 89, 93.  In a vain attempt to cure the deficiencies in their antitrust conspiracy allegations, the Tesla Plaintiffs now add the bald assertion that each of these Dealership Defendants and Private Defendants "through … membership [in the LADA] **are part of the Dealer Cartel**."  *Id.* (emphasis added).

The "Dealer Cartel" is a fiction created by the Tesla Plaintiffs.  The Tesla Plaintiffs allege that the "Dealer Cartel" consists of the LADA, the above six named Dealership Defendants and six Private Defendants, and other commissioner defendants, which "comprises a controlling

4

majority of the" LMVC and which have "conspired" against Tesla to prohibit it from "leasing Tesla vehicles and providing Warranty repair and services for Tesla vehicles in Louisiana." *Id.*, ¶¶ 13, 14.  The Tesla Plaintiffs allege that the LMVC "is dominated by the Dealer Cartel, which seeks to protect the dealership model on which they depend." *Id.*, ¶ 15.  The Tesla Plaintiffs allege that these six Private Defendants, and other commissioner defendants, "[t]hrough their roles on the [LMVC] and participation in the Dealer Cartel … have conspired to bar Tesla from the relevant market." *Id.*, ¶ 94.

Notably, the Tesla Plaintiffs have not cured any of the deficiencies with regards to Private Defendant, Mr. Scoggin, and Dealership Defendant, Airline Car Rental.  In the First Amended Complaint, Mr. Scoggin is alleged to be a "statutorily mandated Commissioner," and a "licensee" at Airline Car Rental.  *Id.*, ¶¶ 99, 100.  **Neither Mr. Scoggin nor Airline Car Rental are alleged to members of the LADA or the so-called "Dealer Cartel," or competitors of the Tesla Plaintiffs.**  *Id.*

The Tesla Plaintiffs' gratuitous insertion of the term "cartel" throughout the First Amended Complaint adds absolutely no substance to their bare allegations.  The First Amended Complaint is entirely lacking in factual support for the existence of a "cartel" or a conspiracy between the Dealership Defendants, the Private Defendants, and any other defendant including the LADA.  Rather, the Tesla Plaintiffs merely insert a new heading "The Dealer Cartel's Conspiracy to Inhibit Competition" but do not add any new, specific factual allegations regarding any of the Dealership Defendants or Private Defendants.  *Id.*, p. 23.  Rather, except for the occasional conclusory and unsupported reference to a "conspiracy" or "Dealer Cartel," all factual allegations concerning the Dealership Defendants and Private Defendants are materially the same as the original Complaint.  *Id.*, ¶¶ 144-236.

The First Amended Complaint does not describe any specific wrongful acts by the Dealership Defendants or the Private Defendants.  The First Amended Complaint contains no allegation that any of the Dealership Defendants or the Private Defendants were personally involved in, or approved any action taken by the LADA.  Rather, as before, the sole link connecting these defendants, except Mr. Scoggin and Airline Car Rental (regarding whom there is no link), is their membership in the LADA, which is simply not enough.

**B.**     **Allegations Regarding the Direct Sales Ban.**

The Tesla Plaintiffs claim that the "Dealer Cartel including some of the [unspecified] Commissioners … successfully lobbied" for a change in Louisiana law in 2017, specifically La. Rev. Stat. § 32:1216(A)(1)(k)(i), to prohibit direct sales by manufactures, such as "Tesla." (the "Direct Sales Ban.")  *Id.*, ¶ 148.  But the Tesla Plaintiffs admit that these purported lobbying efforts and the alleged resulting change in the law <u>are not part of their antitrust or unfair trade practices claims against the Dealership Defendants and Private Defendants</u>.  *Id.* ("To be clear, the lobbying effort was not itself the Dealer Cartel's unlawful conspiracy, but instead illustrates the Cartel's anticompetitive purpose and effect"); *see also* n. 21.  Even if they were, the First Amended Complaint contains no allegations that any of the Dealership Defendants or Private Defendants participated in the alleged lobbying efforts.

**C.**     **Allegations Regarding The Warranty Repair Ban.**

The Tesla Plaintiffs go on to allege that in addition to the Direct Sales Ban, the "Dealer Cartel has agreed to prevent Tesla from servicing" vehicles purchased by Louisiana residents.  *Id.*, ¶ 158.  The Tesla Plaintiffs claim that under an exception to La. Rev. Stat. § 32:1261(A)(1)(t)(i), "Tesla – operating through the three Plaintiffs to this suit - is a 'fleet owner,'" and as such, its warranty and repair services in Louisiana are not subject to oversight by LMVC.

*Id.*, ¶¶ 174-176.  The First Amended Complaint, however, concedes that only Tesla Lease Trust "holds a license under Louisiana law authorizing it to lease vehicles in Louisiana."  *Id.*, ¶ 27. The Tesla Plaintiffs vaguely claim that the "Dealer Cartel" has "agreed to reinterpret state law to prohibit Tesla from operating in in Louisiana …."  *Id.*, ¶ 178.

This argument fails for multiple reasons.  First, the law *never* permitted Tesla, Inc., a manufacturer, to perform warranty and repair services in Louisiana on vehicles sold to and owned by third parties, including Louisiana residents.  It states:

A. **It shall be a violation of this Chapter**:

(1) **For a manufacturer**, a …

(t)(i) **To operate a satellite warranty and repair center, to authorize a person to perform warranty repairs, including emergency repairs**, who is not a motor vehicle dealer, **fleet owner**, or an emergency services company ….

La. Rev. Stat. § 32:1261(A)(1)(t)(i) (emphasis added).  The statute contains an exception such that a "fleet owner," which is defined to mean "**a person**, including a governmental entity, who is approved and authorized by a manufacturer to perform warranty repairs and **owns or leases vehicles for its own use or a renting or leasing company that rents, maintains, or leases vehicles to a third party**" can perform warranty repairs *to its own fleet of vehicles.  Id.*  Thus, even though Tesla Lease Trust qualifies as a "fleet owner," the statute never permitted Tesla, Inc., much less Tesla Finance, LLC, to make warranty repairs or perform warranty services on Tesla vehicles.

Second, even if the Tesla Plaintiffs could demonstrate that the "Dealer Cartel" had an agenda to "reinterpret" the statute to prohibit Tesla Lease Trust from making warranty repairs, the First Amended Complaint contains no facts whatsoever any agreement, participation, or even knowledge by the Dealership Defendants or the Private Defendants.  The Tesla Plaintiffs rely on

emails and letters between the LADA, *non-party dealerships*, *non-party* LMVC and its *non-party* executives, to support their conspiracy theory.  *Id.*, ¶¶ 179-190; *See* Exhibits filed at ECF 1-2, 1-3, 1-4, and 1-5, attached to original Complaint, and incorporated into the First Amended Complaint by reference.  As with their allegations regarding the Direct Sales Ban, none of the Dealership Defendants or the Private Defendants sent or were even copied on the communications.  *Id.* Furthermore, there are no factual allegations in the First Amended Complaint that the LMVC agreed with or enacted any of the regulations proposed by LADA.  *Id.*

Rather, the allegations in the First Amended Complaint make it clear that <u>LMVC did not agree with LADA's interpretation of the Direct Sales Ban or Warranty Repair Ban</u>.  The Tesla Plaintiffs allege that the "Dealer Cartel" had a Louisiana State Representative seek a formal opinion from the Attorney General to interpret state law to prohibit Tesla Lease Trust from leasing and servicing its leased vehicles in Louisiana because the manufacturer, Tesla, Inc., did not have a licensed dealership in Louisiana.  *Id.*, ¶¶ 191-193; Exhibit filed at ECF 1-6, incorporated into the First Amended Complaint.

The LMVC, however, had previously issued Tesla Lease Trust a Lessor's license, and the Tesla Plaintiffs candidly admit, that when the Attorney General sought the LMVC's opinion on the matter, LMVC officially disagreed with the LADA's position on the Warranty Repair Ban and advised the Attorney General that Tesla Lease Trust was lawfully licensed to lease vehicles and to service its fleet of leased vehicles in Louisiana.  *Id.*, ¶¶ 194-195; 197; 199-200; ECF 1-1, incorporated into the First Amended Complaint (*see* ¶ 38).  The LMVC's letter stated, explicitly, that the argument "seeking to bootstrap the statute which clearly prohibits direct *sales* by manufactures/distributors to consumers into also prohibiting direct *leasing* to consumers by analogy" must be rejected as "no such prohibition against direct *leasing* exists."  ECF 1-1, p. 2.

These facts, admitted to by the Tesla Plaintiffs, contradict the existence of a "Dealer Cartel" and the contention that LADA somehow controls the LMVC Commissioners, and that there is some "anti-Tesla" conspiracy between LADA, the LMVC, Dealership Defendants, and Private Defendants.  The Tesla Plaintiffs' newly added conclusory allegation that the LMVC's "position has recently changed – as the Dealer Cartel's conspiracy has borne fruit" adds nothing.  Doc. 151, ¶ 196.  Nowhere in the First Amended Complaint are there any factual allegations which demonstrate that the LMVC has contradicted its position taken in 2020 that Tesla Lease Trust may lawfully *lease* vehicles in Louisiana and service *leased* vehicles in Louisiana.

### D. Allegations Regarding LMVC's Investigative Subpoenas to Tesla Lease Trust.

Stripped of all unsupportive, conclusory, and speculative allegations, the First Amended Complaint alleges a discreet set of facts to purportedly support an "anti-Tesla" conspiracy involving LMVC and its Commissioners.  The Tesla Plaintiffs contend that in August 2020, *non-party* LMVC, acting through its *non-party* Executive Director, began an allegedly unlawful "investigation of Tesla Lease Trust" and its leasing and servicing activities in Louisiana.  *Id.*, ¶¶ 202-204.  At that time, the LMVC's Executive Director issued an investigative subpoena to Tesla Lease Trust seeking records regarding its activities in Louisiana.  *Id.*, ¶ 204.  Tesla Lease Trust responded to the subpoena.  *Id.*, ¶ 205.  The Tesla Plaintiffs allege that the LMVC's Executive Director then issued a second subpoena, which was withdrawn.  *Id.*

The Tesla Plaintiffs further allege that on February 12, 2021, the LMVC's Executive Director issued a third investigative subpoena to Tesla Lease Trust regarding "warranty repairs" in alleged violation of La. Stat. § 32:1261(A)(1)(t)(i).  *Id.*, ¶ 206; Exhibit filed at ECF 1-7, incorporated into First Amended Complaint.  The Tesla Plaintiffs contend that *non-party* LMVC, acting through its *non-party* Executive Director, apparently adopted the LADA's strained

interpretation of "fleet owner." *Id.*, ¶¶ 207-208. As the Tesla Plaintiffs' argument goes, because "Tesla" purports to be a "fleet owner," the LMVC was without authority to investigate whether Tesla Lease Trust was servicing non-leased vehicles in violation of Louisiana law. *Id.*, ¶¶ 209-210.

The Tesla Plaintiffs now allege that the purported change in position was due to an "illegal agreement by the Dealer Carter to use its control over" the LMVC "to drive Tesla out of" the market. *Id.*, ¶¶ 208, 210. But again, the Tesla Plaintiffs rely solely on conclusory statements. The First Amended Complaint contains no specific facts to demonstrate the existence of a "Dealer Cartel" or any agreement or conspiracy by or among its alleged members, including the Dealership Defendants and Private Defendants, against Tesla. Tesla Lease Trust refused to produce documents in response to the third subpoena. *Id.*, ¶ 209.

The Tesla Plaintiffs attempt to paint LMVC's investigative actions as some change in its position to align itself with LADA's position and/or the "Dealer Cartel", but it is readily apparent this is not the case. *See* Exhibit filed at ECF 1-1. LMVC has always contended that Tesla Lease Trust could service its fleet of leased vehicles, and the LMVC had the authority to investigate a licensed lessor, such as Tesla Lease Trust, for allegedly providing warranty work to vehicles outside of its fleet.

In any event, in accordance with LMVC's administrative procedures, *non-party* LMVC's Executive Director "filed a motion to compel before the Commission requesting that the Commission order Tesla Lease Trust to respond to the February 12, 2021, subpoena." *See* Doc. 151, ¶ 211. The Tesla Plaintiffs then issued public records requests to LMVC on April 20 and May 12, 2021. *Id.*, ¶ 212. The Tesla Plaintiffs contend that LMVC's attorney, Adrian LaPeyronnie, determined what documents to produce, which they claim were "few" and contained

"substantial redactions," because Mr. LaPeyronnie is also a part of the "conspiracy" and only "carrying out the Dealer Cartel's will in furtherance of" same. *Id.*, ¶¶ 213-217. Again, there are zero facts pled to support this outrageous assertion.

Tesla Lease Trust attempted to continue the hearing on the motion to compel, because of alleged incomplete responses to its public records requests and because Tesla Lease Trust allegedly would not "receive a fair and impartial adjudication before" the LMVC. *Id.*, ¶¶ 218-219. That request was denied by LMVC. *Id.*, ¶ 220. The LMVC then "ordered Tesla Lease Trust to respond" to the subpoena. *Id.*, ¶ 222. However, LMVC did agree to stay "Tesla Lease Trust's supposed obligation to comply with the February 12, 2021, subpoena to allow Tesla Lease Trust to seek judicial review of the Commission's ruling granting the motion to compel *filed by its Executive Director*." *Id.*, ¶ 223. Tesla Lease Trust also moved for a rehearing before the Commission, which was heard and denied on July 12, 2021. *Id.*, ¶¶ 225-26.

In the First Amended Complaint, the Tesla Plaintiffs allege that three of the Private Defendants, Mr. Leblanc (Leblanc Automobiles), Mr. Scoggin (Airline), and Ms. Corley (Shetler-Corley Motors), acting in their official capacities as Commissioners, "voted against Tesla Leas[e] Trusts' motion for continuance or otherwise took [unspecified] actions against Tesla Lease Trust's motion." *Id.*, ¶ 224. They allege that four of the Private Defendants, Mr. LeBlanc (Leblanc Automobiles), Mr. Scoggin (Airline), Mr. Guidry (Golden Motors), and Ms. Corley (Shetler-Corley Motors), acting in their official capacities as Commissioners, voted to compel compliance with the subpoena. *Id.*, ¶ 228. They further allege that five of the Private Defendants, Mr. Leblanc (Leblanc Automobiles), Mr. Hightower (Holmes Motors), Mr. Marcotte (Morgan Buick), Mr. Fontenot (T & J Ford), and Mr. Guidry (Golden Motors), acting in their official capacities as Commissioners, voted that LMVC has authority to issue the subpoena. *Id.*, ¶ 229. They also allege

that four of the Private Defendants, Mr. Leblanc (Leblanc Automobiles), Mr. Hightower (Holmes Motors), Mr. Fontenot (T & J Ford), and Mr. Guidry (Golden Motors), acting in their official capacities as Commissioners, voted to deny rehearing.  *Id.*, ¶ 230.  Although the Tesla Plaintiffs argue that the "votes were the result of an illegal agreement to drive Tesla out of the relevant market," the First Amended Complaint, again, provides no factual support for this conclusion.  In fact, the variance in the votes of the Private Defendants, and the fact that they did not all uniformly vote against Tesla on every issue, demonstrates there was no "agreement" between them.

     **E.**     **Tesla Lease Trust's Petition for Judicial Review Filed More than One Year Ago on August 26, 2021.**

On August 26, 2021, Tesla Lease Trust filed a "petition for judicial review" in state court challenging the LMVC subpoenas.  *Id.*, ¶¶ 231-236; *see also* Exhibit "A," Petition for Judicial Review and its attachments, attached hereto.[4]  That state court petition, that was brought solely by Tesla Lease Trust, remains pending.  *Id.*, ¶¶ 231-236.  None of the Dealership Defendants, LMVC Commissioners, or Private Defendants are parties to that proceeding.  *Id.*  Yet, in their First Amended Complaint, the Tesla Plaintiffs allege that somehow the LMVC's "pursuit of these administrative and state court proceedings is evidence of the ongoing unlawful conspiracy to bar Tesla[5] from doing business in Louisiana."  *Id.*, ¶ 202.

Notably, Tesla Lease Trust made many of the same arguments in its Petition for Judicial Review, filed over a year ago, as the Tesla Plaintiffs do in their First Amended Complaint. *See* Exhibit "A."  In support of its contention that it had been deprived of due process, Tesla Lease

---

[4]     This Court may properly consider the Petition for Judicial Review and its incorporated attachments on a Rule 12(b)(6) motion.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[5]     Again, there is no ban on Tesla Lease Trust doing business in Louisiana, and Tesla, Inc. has been issued a manufacturer's license from the LMVC.

Trust urged in its August 26, 2021 Petition, that LADA sought to "block Tesla from operating in Louisiana" and due to their association with LADA, the LMVC Commissioners were "inherently biased" against Plaintiffs.  *Id.*, ¶¶ 10-11, 18, 21, 22, 28; 48-54.   The same arguments, facts, and documents referred to in the First Amended Complaint are also alleged in and attached to the May 14, 2021 Affidavit of Plaintiffs' counsel, Mark R. Beebe, which was attached to the Petition.[6]  *See* Exhibit "3," attached to Exhibit "A."   Thus, it is readily apparent that the Tesla Plaintiffs have known of these alleged matters for well over a year.[7]

In any event, the <u>only</u> factual allegations attempting to tie LMVC Commissioners to the alleged wrongful pursuit of investigative subpoenas issued to Tesla Lease Trust are that some of them voted, in different ways, against Tesla Lease Trust on various issues related to the subpoenas.  *Id.*, ¶¶ 224; 228-230.  **Thus, the Tesla Plaintiffs' entire case against the Dealership Defendants and the Private Defendants is based on the fact that some of them are competitors and members of LADA and some of them, in their official capacities, voted to compel Tesla Lease Trust to respond to a subpoena and voted against a rehearing.**  As shown above, there are no other allegations in the First Amended Complaint that any of the Dealership Defendants or Private Defendants were parties to any alleged "anti-competitive" campaign or conspiracy against the Tesla Plaintiffs.  *See* Exhibits filed at ECF 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, and 1-7.

Even more damning is that the Tesla Plaintiffs also sued defendants who clearly had virtually no involvement at all in the subpoenas.  The Tesla Plaintiffs admit that Mr. Scoggin and his alleged business, Airline Car Rental, are *not* LADA members, are *not* direct competitors

---

[6]     Interestingly, in the May 14, 2021 Affidavit of counsel for Tesla Lease Trust, Mr. Beebe defines "Tesla" to be only "Tesla Lease Trust."  *See* Exhibit "A-3," ¶ 2.

[7]     The Tesla Plaintiffs contend, in footnote 22, p. 29, of their First Amended Complaint, that they "only recently" learned about the communications they attach to their pleading, even though Mr. Beebe's Affidavit makes it clear they knew of them no later than May 14, 2021.

of the Tesla Plaintiffs, and are not participants in the alleged "Dealer Cartel." *Id.*, ¶¶ 48; 99-100.

Moreover, the Tesla Plaintiffs admit that Mr. Hightower (Holmes Motors), Mr. Fontenot (T & J

Ford), and Mr. Marcotte (Morgan Buick), did not *preside over the LMVC hearing, nor did they*

*vote to compel Tesla Lease Trust to respond to the subpoenas*.  *Id.*, ¶ 228.

## LAW AND ARGUMENT

### I.    RULE 12(b)(6) STANDARD.

Rule 12(b)(6) authorizes the filing of a motion to dismiss a case for "failure to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion,

the district court is generally confined to the facts stated in the pleading.  Fed. R. Civ. P. 12(d).

However, the district court may properly consider documents that "are referred to in the plaintiff's

complaint and are central to [his] claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,

498-99 (5th Cir. 2000).  For the purposes of deciding a Rule 12(b)(6) motion, the allegations of a

complaint must be accepted as true.  *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.

1986).    Nonetheless, the complaint must contain "more than labels and conclusions" and its

"[f]actual allegations must be enough to raise a right to relief above the speculative level.  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).

Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to

dismiss.  *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir.

2003).    Thus, courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

For all of the reasons stated in the Dealership Defendants' and Private Defendants'

initial Rule 12(b)(6) Motion, Counts I and V still fail to state claims upon which relief can be

granted.    As with the original complaint, the First Amended Complaint relies only on bald,

conclusionary allegations and does not contain specific facts to demonstrate the formation of an agreement or conspiracy to unlawfully restrain trade by the Dealership Defendants or the Private Defendants with any other party.  The superficial change in terminology to collectively refer to LADA, some of the Dealership Defendants, and some of the Private Defendants as a "Dealer Cartel" does not state a cause of action.

## II.   COUNTS I AND V OF THE FIRST AMENDED COMPLAINT FAIL TO STATE CLAIMS FOR ANTITRUST VIOLATIONS UNDER FEDERAL AND STATE LAW.

### A.   <u>Applicable Legal Standards</u>.

Section 1 of the Sherman Act declares unlawful every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce .…"  15 U.S.C. § 1.  To state an antitrust claim, the Tesla Plaintiffs must allege that "the defendants (1) engaged in a conspiracy (2) that produced some anti-competitive effect (3) in the relevant market."  *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc*., 200 F.3d 307, 312 (5th Cir. 2000) (*quoting Johnson v. Hospital Corp. of America*, 95 F.3d 383 (5th Cir. 1996)).  The Tesla Plaintiffs must also allege that "they have suffered an injury stemming from the complained-of anti-competitive behavior."  *Id.* (*citing Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  " 'Antitrust injury' is an 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.' " *In re Pool Products Distribution Mkt. Antitrust Litig*., 158 F.Supp.3d 544, 550 (E.D. La. 2016) (*quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*., 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)).

Louisiana law is substantially similar.  *See* La. Rev. Stat. § 51:122(A) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or

commerce in this state is illegal").  Louisiana courts apply the same standards and consider federal analysis of the Sherman Act to be persuasive, although not controlling.  *HPC Biologicals, Inc. v. UnitedHealthcare of Louisiana, Inc.*, 16-0585, p. 8 (La. App. 1 Cir. 5/26/16); 194 So. 3d 784, 793 (plaintiffs must allege "that defendants (1) engaged in a conspiracy; (2) that restrained trade or injured competition; (3) in a particular market" as well as an antitrust injury).

      As explained by the Supreme Court, "[b]ecause § 1 of the Sherman Act does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Bell Atlantic*, 550 U.S. at 553 (internal quotations and citations omitted).  Thus, to state a § 1 claim sufficient to withstand dismissal on a Rule 12(b)(6) motion "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made…  and a bare assertion of conspiracy will not suffice." *Id.* at 556-58.

      To satisfy the conspiracy element under federal or state law the Tesla Plaintiffs "must show 'that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *HPC Biologicals,* 194 So. 3d at 793 (*quoting Marucci Sports, L.L.C. v. National Collegiate Athletic Association*, 751 F.3d 368, 373–74 (5th Cir. 2014)).  The complaint must specify "that a defendant purposefully joined and participated in the conspiracy." *In re Processed Egg Products Antitrust Litig.*, 821 F.Supp.2d 709, 720 (E.D. Pa. 2011) (internal citations omitted).  There must be "more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy." *Id.*  "Simply using the

global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient." *Id.*

In the context of trade associations, federal courts have consistently concluded that "mere membership in a trade association … is insufficient without more to give rise to an inference of conspiracy." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd*., 513 F.Supp. 1100, 1149 (E.D. Pa. 1981), *aff'd in part, rev'd in part sub nom*. 723 F.2d 319 (3d Cir. 1983) (collecting numerous cases). Federal courts have uniformly "reject[ed] the notion that mere membership in a trade association gives rise to an inference of conspiratorial conduct by a particular member, even when the association itself has been found to have engaged in illegal conduct." *Id.* Rather, "there must be proof of knowing, intentional, participation" by each defendant "in the illegal scheme." *Id.* (emphasis added). "The key element of proof for linking an Association member to the acts of his organization is a showing that he knew of and condoned the act in issue." *Kline v. Coldwell, Banker & Co*., 508 F.2d 226, 231–32 (9th Cir. 1974) (*quoting Vandervelde v. Put & Call Brokers & Dealers Association, Inc*., 344 F.Supp. 118, 155 (S.D.N.Y.1972)).

**B.    The Tesla Plaintiffs Have Not Adequately Alleged the Existence of an Antitrust Conspiracy.**

Here, the Tesla Plaintiffs added a new heading to their existing allegations: "The Dealer Cartel's Conspiracy to Inhibit Competition," *see* Doc. 127-3, p. 28; Doc. 151, p. 23, but added no new facts to support this conclusory statement. Rather, the Tesla Plaintiffs continue to rely solely on conclusionary allegations regarding the existence of an agreement and conspiracy which are insufficient to state a claim. *Id.*, ¶ 147 (alleging "the Dealer Cartel Defendants named in this lawsuit conspired with one another …." without any supporting facts); n. 21 (alleging that "when the Cartel was unable to prevent all competition through lobbying, it reached an unlawful agreement to eliminate competition effectuated through the Cartel's control of the Commission"

17

without any supporting facts); ¶ 158 (alleging without supporting facts that "the Dealer Cartel has agreed to prevent Tesla from servicing [Tesla] vehicles").[8]

As before, the Tesla Plaintiffs merely point to isolated examples of communications between non-party dealerships and/or non-party representatives of LADA to executives of LMVC and the Attorney General regarding Tesla Lease Trust <u>to which none of the Dealership Defendants or Private Defendants were parties</u>. Rec. Doc. 127-3, ¶¶ 149, 148, 178-93; Exhibits filed at ECF 1-1, 1-2, 1-3, 1-4, and 1-5. The Tesla Plaintiffs' have added no new information as to the Dealership Defendants and the Private Defendants purported involvement other than to lump them together with LADA and others as part of an alleged "Cartel." This is the exact type of collective pleading which courts have repeatedly held do not state a cause of action under antitrust law absent <u>specific</u> and <u>particularized</u> allegations that each defendant knowingly entered an agreement and participated in the alleged conspiracy. *In re Processed Egg Products*, 821 F.Supp.2d at 720 (E.D. Pa. 2011); *Zenith Radio Corp.*, 513 F.Supp. at 1149.

The Tesla Plaintiffs' allegations regarding the investigative subpoena issued by LMVC are also largely unchanged except for the addition of the new terminology "Dealer Cartel" and the unsupported insertion of the terms "agreed" or "agreement." Tesla Plaintiffs claim the LMVC's investigation was somehow illegally undertaken at the behest of the "Cartel." The Tesla Plaintiffs allege "On information and belief, the Dealer Cartel agreed to have the Commission bring an end to Tesla's leasing and servicing activities in Louisiana." *Id.*, ¶ 202; *see also* ¶ 204 (alleging "On information and belief, [LMVC's] subpoena as the direct result of an illegal agreement by the Dealer Cartel … to drive Tesla out of Louisiana …."); ¶ 208 (referring to the

---

[8]     The Tesla Plaintiffs continue to take the position that the LADA's alleged lobbying efforts in connection with the enactment of the direct sales ban is not "part of their antitrust or unfair trade practice claims." *Id.*, n. 20; ¶ 148.

alleged "illegal agreement by the Dealer Cartel to … control [LMVC and] … drive Tesla out of Louisiana…"); ¶ 210 (referring to the "illegal agreement to drive Tesla out of the relevant market" …").  But again, there are no specific facts pled to demonstrate that each of the Private Defendants and each of the Dealership Defendants knowingly and purposefully entered into any "agreement," much less one for an illegal purpose in restraint of trade.  *In re Processed Egg Products*, 821 F.Supp.2d at 720 (E.D. Pa. 2011); *Zenith Radio Corp.*, 513 F.Supp. at 1149.

At best, the Tesla Plaintiffs allege that some of the Private Defendants, in their official capacities as Commissioners, voted against Tesla Lease Trust's request for a continuance and voted to compel Tesla Lease Trust to comply with the investigative subpoena.  *Id.*, ¶¶ 224-30.  There was no consensus or uniformity in the voting however.  *Id.*  The Tesla Plaintiffs' insertion of the bald, unsupported conclusion that the voting was "the result of an illegal agreement to drive Tesla out of the relevant market" does not state a claim for an antitrust violation or demonstrate an antitrust conspiracy.  The Tesla Plaintiffs' First Amended Complaint does not allege facts to demonstrate "concerted action" or "'a conscious commitment to a common scheme designed to achieve an unlawful objective."  *HPC Biologicals,* 194 So. 3d at 793; *Marucci Sports, L.L.C.*, 751 F.3d at 373–74; *Monsanto,* 465 U.S. at 764.  The First Amended Complaint, therefore, fails to state a claim for antitrust violations upon which relief can be granted.

C.   **Plaintiffs Have Not Adequately Alleged An Antitrust Injury.**

The First Amended Complaint also fails to allege a non-speculative antitrust injury. The Tesla Plaintiffs admit that the state court action which Tesla Lease Trust brought "to challenge the Commission's subpoenas" "is still ongoing," and that LMVC stayed the obligation to comply with the subpoena pending judicial review.  Doc. 151, ¶¶ 231-36.  These allegations have not been substantively changed.  *Id.*  The First Amended Complaint contains no allegation that Tesla Lease

Trust has been denied a license to lease vehicles in Louisiana or barred from servicing its leased vehicles in Louisiana.  And the Tesla Plaintiffs concede that Tesla Lease Trust has not been required to answer the investigative subpoena which remains under judicial review.  Thus, the Tesla Plaintiffs clearly have not suffered an actionable antitrust injury "of the type the antitrust laws were intended to prevent" which "flows from" some unlawful conduct of the Dealership Defendants or the Private Defendants.  *In re Pool Products Distribution Mkt. Antitrust Litig*., 158 F.Supp.3d 544, 550 (E.D. La. 2016) (*quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*., 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)).

The allegations of the First Amended Complaint, in fact, show that any alleged injury is entirely speculative.  The Tesla Plaintiffs plead that if the alleged conspiracy against them "is not thwarted now, *it will ultimately result in* Tesla's removal from the relevant market …." Doc. 151, ¶ 245.  They contend "[o]n information and belief, Defendants *next intend to have* the [LMVC] use its authority to prohibit Tesla … from leasing new vehicles and offering warrant repair and service work directly to consumers…." *Id.*, ¶ 249.  They claim "*if the [LMVC] were to ban Tesla* from leasing directly to consumers … Tesla *would suffer lost sales* …." *Id.*, ¶ 252; *see also* ¶ 253 (similarly alleging that if LMVC "*were to ban Tesla* from providing warranty repairs and services directly to consumers … Tesla and consumers *would be harmed*.").[9]  As there has been no such ban, and the First Amended Complaint contains absolutely no facts to support the conclusory assertion that such a ban is imminent, Tesla has not suffered an antitrust injury.

For all these reasons, the First Amended Complaint fails to state a claim upon which relief can be granted for alleged antitrust violations under federal or state law.  *SMH Enterprises*, 340 F.R.D. at 563; *Stripling*, 234 F.3d at 873.

---

[9]	Substantially similar, if not identical, allegations are made under the state law antitrust count.  *Id.*, ¶¶ 343, 347, 350, 351.

III.   **COUNT VI OF THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR UNFAIR TRADE PRACTICES UNDER STATE LAW.**

    A.   <u>Applicable Legal Standards.</u>

Under the Louisiana Unfair Trade Practices Act ("LUTPA") "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  La. Rev. Stat. § 51:1405(A).  Under LUTPA, "[w]hat constitutes unfair and/or deceptive practices is not specifically defined, but is determined on a case by case basis."  *831 Bartholomew Investments-A, L.L.C. v. Margulis*, 08-0559 (La. App. 4 Cir. 9/2/09); 20 So. 3d 532, 538 (*quoting Jefferson v. Chevron U.S.A., Inc*., 98-0254, 97-2436 (La. App. 4 Cir. 5/20/98); 713 So. 2d 785, 792-793).  "A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious."  *Id.* at 539. (emphasis added). "A trade practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation."  *Id.*  Allegations of "unfair" or "deceptive" conduct which are "merely conclusory" are insufficient to state a claim.  *Id.*; *see also Cargill, Inc. v. Degesch Am., Inc*., 875 F.Supp.2d 667, 676 (E.D. La. 2012) (dismissing on 12(b)(6) motion plaintiffs' LUTPA claim, and stating "conclusory allegations of unethical or oppressive conduct not supported by the record are insufficient").

    B.   <u>Count VI Should Be Dismissed.</u>

The same vague conduct urged in the First Amended Complaint in support of the antitrust claims is the alleged basis for the Tesla Plaintiffs' LUTPA claim.  *See* Doc. 151, ¶¶ 367-68, 373-75.  The proposed First Amended Complaint is devoid of any factual allegations to suggest that that Dealership Defendants or Private Defendants engaged in any unfair act or practice that is against public policy or could be considered unethical, oppressive, unscrupulous, substantially injurious, fraudulent or deceitful.  La. Rev. Stat. § 51:1405(A); *831 Bartholomew*, 20 So. 3d at

538; *Jefferson*, 713 So. 2d at 792-793.  For the same reasons that the antitrust claims are deficient, the Tesla Plaintiffs' unfair trade practice claim fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

## IV.   COUNTS V AND VI ARE PRESCRIBED ON THE FACE OF THE FIRST AMENDED COMPLAINT.

### A.   Applicable Legal Standards.

"Where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling or the like, the Court may dismiss a claim under Rule 12(b)(6)."  *Chiasson v. Rogers-Premier Enterprises*, LLC, CV 19-2502, 2019 WL 4805886, at *2 (E.D. La. Oct. 1, 2019) (*citing Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  "Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed." *Id.* (*quoting Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 878 (5th Cir. 2002)).  "But, once prescription is evident from the pleadings, the burden shifts to the plaintiff to demonstrate that prescription was either suspended or interrupted." *Id.*

Louisiana's antitrust statutes do not contain a specific prescriptive period for private actions for damages.  However, Louisiana courts hold that antitrust actions are subject to a one-year liberative prescription under Louisiana Civil Code art. 3492.  *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc*., 19-0730, p. 30 (La. App. 1 Cir. 7/2/19); 2019 WL 2865138, *15 *writ denied*, 19-01232 (La. 11/19/19); 282 So. 3d 1069, and *writ denied*, 19-01436 (La. 11/19/19); 282 So. 3d 1070, and *writ denied*, 19-01349 (La. 11/19/19); 282 So. 3d 1073 (collecting cases).  "This prescription commences to run from the day injury or damage is sustained."  La. Civ. Code art. 3492.

Claims under LUTPA are also subject to a one-year prescriptive period:

> E. The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action.

La. Rev. Stat. § 51:1409(E).

## B.      Counts V and VI Must Also Be Dismissed as Prescribed.

The Tesla Plaintiffs' state law claims are subject to a one year prescriptive period. La. Civ. Code art. 3492; *CamSoft Data Sys.,* 2019 WL 2865138 at *15; La. Rev. Stat. § 51:1409(E). The First Amended Complaint alleges that the conduct which the Tesla Plaintiffs' claim constitutes an unlawful restraint of trade and/or unfair trade practice all occurred well over a year before this lawsuit was filed, in 2017 through May 2021. *See* Doc. 151, ¶¶ 148-49; 153-54; 162; 180-195; 201-230. The First Amended Complaint alleges that the Tesla Plaintiffs were aware of the alleged conduct since at least April or May of 2021. *Id.*, ¶¶ 212-14. This is also evident from Mr. Beebe's May 14, 2021 Affidavit, which shows that the Tesla Plaintiffs have been in possession of all of the emails, letters, and communications that they relied on in the original complaint and again in the First Amended Complaint, for more than a year, when this lawsuit was filed on August 26, 2022. *See* Exhibit "3," attached to Exhibit "A." Further, Tesla Lease Trust's state court Petition for Judicial Review raised similar factual allegations as in this lawsuit, but was filed more than a year earlier, on August 26, 2021. *Id.*, ¶ 232; Exhibit "A."

Yet, despite knowledge of the alleged facts that support their purported state law claims, the Tesla Plaintiffs waited for more than a year to file suit. As such, the state law claims, Counts V and VI are clearly prescribed. *CamSoft Data Sys.,* 2019 WL 2865138 at *15; La. Civ. Code art. 3492; La. Rev. Stat. § 51:1409(E). Nothing in the proposed First Amended Complaint changes this conclusion. The Tesla Plaintiffs' vague assertions that the alleged conduct is "continuing" and "ongoing" do not sustain its burden of showing their claims are not prescribed.

23

*See* Doc. 151, ¶¶ 210, 236, 374.  There is not a single substantive fact stated in the First Amended Complaint of any wrongful conduct by any of the Dealership Defendants or the Private Defendants in the year prior to the filing of this lawsuit.  Rather, all that is alleged is that the state court judicial proceeding, *which the Tesla Plaintiffs brought against LMVC and to which the Dealership Defendants and the Private Defendants are not parties*, remains pending.  Counts V and VI are prescribed and should be dismissed with prejudice.

## V.   COUNT VII OF THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR A DECLARATORY JUDGMENT.

### A.   Applicable Legal Standards.

The Declaratory Judgement Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration.'"  *Perry v. H.J. Heinz Co. Brands, LLC*, CV 19-280, 2019 WL 2423231, at *3 (E.D. La. June 10, 2019) (*quoting* 28 U.S.C. § 2201).  But "[c]ourts uniformly dismiss declaratory judgment claims under Federal Rule of Civil Procedure 12(b)(6) if they are redundant of the substantive legal claims."  *Id.* (collecting numerous cases).  A plaintiff is not entitled to "declaratory relief" which merely "mirrors" his substantive claims.  *Veal v. Wells Fargo Bank, N.A.*, 16-CV-3998, 2016 WL 6024534, at *6 (E.D. La. Oct. 14, 2016).  The appropriate test is "whether resolving other claims would render a declaratory judgement superfluous."  *Perry*, 2019 WL 2423231 at *4 (*citing Robinson v. Hunt County, Texas*, 921 F.3d 440, 450-51 (5th Cir. 2019)).

### B.   Count VII Should Be Dismissed.

In Count VII, the Tesla Plaintiffs ask the Court to "exercise its authority to declare that the Commission's composition does not comport with due process, the direct sales ban is unconstitutional, and that the Dealers Association, its members, the Dealerships, and the named Commissioners' conduct violates state and federal law."  Doc. 151, ¶ 386.  The relief requested is

entirely redundant of the substantive legal claims attempted to be stated in Counts I through VI. ¶¶ 264, 270, 294, 299, 313, 318, 329, 362, 379.  Because resolving these claims would render a declaratory judgment "superfluous," Count VII fails to state a claim for declaratory relief and should be dismissed with prejudice.  *Perry*, 2019 WL 2423231 at *4; *Veal* 2016 WL 6024534 at *6.

<h2 align="center">CONCLUSION</h2>

For the foregoing reasons, the Renewed Rule 12(b)(6) Motion to Dismiss filed by the Dealership Defendants and Private Defendants should be granted and all costs against urged in the First Amended Complaint dismissed with prejudice.

Respectfully submitted,

*/s/Patrick S. McGoey*
Patrick S. McGoey, 24549
Andrea V. Timpa, 29455
SCHONEKAS EVANS McGOEY &
McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone:  504-680-6050
Facsimile:  504-680-6051
patrick@semmlaw.com
andrea@semmlaw.com

*Attorneys for The Dealership Defendants and Private Defendants*

<h2 align="center">CERTIFICATE OF SERVICE</h2>

I hereby certify that on January 23, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/Patrick S. McGoey*
PATRICK S. McGOEY